FILED
COURT OF APPEALS
DIVISION II

2015 MAY 19 AM 9: 05

STATE OF WASHINGTON

BY_____
       DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45497-1-II |
| Respondent, | |
| v. | |
| CALVERT R. ANDERSON, JR., | PUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. — Calvert Anderson appeals his convictions for third degree assault and obstructing a law enforcement officer. During voir dire, Anderson successfully challenged four prospective jurors for cause at a sidebar conference. We hold that the trial court violated Anderson's constitutional right to a public trial by allowing counsel to make juror challenges for cause at a sidebar conference without first conducting a *Bone-Club*[1] analysis. Therefore, we reverse Anderson's convictions and remand for a new trial.

## FACTS

The State charged Anderson with third degree assault and obstructing a law enforcement officer after he scuffled with police officers. A jury convicted Anderson of both crimes.

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

During voir dire, Anderson challenged four prospective jurors for cause at a sidebar conference. The trial court dismissed all four challenged prospective jurors.[2] No transcription of the sidebar conference appears in the record, but the trial court later noted the challenges and resulting dismissals for the record. The trial court did not conduct a *Bone-Club* analysis before the sidebar conference.

Anderson appeals his convictions.

## ANALYSIS

Anderson argues that the trial court violated his public trial right by allowing him to challenge prospective jurors for cause at a sidebar conference, when spectators in the courtroom presumably could not hear what was occurring.[3] We agree and hold that (1) the sidebar conference addressing juror challenges for cause constituted a closure of courtroom proceedings because the public could not hear what occurred, (2) under the experience and logic test, challenging jurors for cause implicates the public trial right, and (3) the trial court did not establish any justification for closing the for cause juror challenge proceedings.

A.     PUBLIC TRIAL RIGHT – GENERAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176

---

[2] The court later dismissed a fifth prospective juror for cause at a second sidebar conference, apparently sua sponte.

[3] Anderson's own successful challenges for cause form the basis for this appeal, and he did not object to the process below. However, a defendant does not waive a public trial right claim on appeal by failing to object to a court closure below. *State v. Wise*, 176 Wn.2d 1, 15, 288 P.3d 1113 (2012).

Wn.2d 1, 9, 288 P.3d 1113 (2012). In general, this right requires that certain proceedings be held in open court unless the trial court first applies on the record the five-factor test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995), and finds that a closure of the courtroom is justified. A public trial right violation is structural error, and we presume prejudice where a trial court closes trial proceedings without conducting a *Bone-Club* analysis. *Wise*, 176 Wn.2d at 13-14.

In analyzing whether the trial court has violated a defendant's public trial right, we must determine whether (1) the trial court closed the proceedings to the public, (2) the proceedings implicate the public trial right, and (3) the closure was justified. *State v. Smith*, 181 Wn.2d 508, 513-14, 334 P.3d 1049 (2014).[4] Whether the trial court has violated a defendant's right to a public trial is a question of law that we review de novo. *Id.* at 513.

B.     CLOSURE OF PROCEEDINGS

Anderson argues that the trial court effectively closed the proceedings by allowing him to challenge jurors for cause at a sidebar conference, even though the courtroom remained open to the public. We agree.

---

[4] Our Supreme Court in *Smith*, 181 Wn.2d at 513, and *State v. Gomez*, No. 90329-8, 2015 WL 1590302, at *2 (Wash. Apr. 9, 2015), stated that the first step in the analysis of a public trial right claim is determining whether the proceedings implicate the public trial right, and the second step in that analysis is assessing whether the trial court closed the proceedings. However, where a genuine question exists as to whether a closure occurred, that issue may be addressed first. For instance, in both *State v. Andy*, 182 Wn.2d 294, 301, 340 P.3d 840 (2014) and *State v. Njonge*, 181 Wn.2d 546, 556-58, 334 P.3d 1068, *cert. denied*, 135 S. Ct. 880 (2014), the court addressed whether a closure had occurred before determining whether the proceedings implicated the defendant's public trial right.

A defendant's public trial right can be violated only if there has been a closure of court proceedings. *State v. Njonge*, 181 Wn.2d 546, 556, 334 P.3d 1068, *cert. denied*, 135 S. Ct. 880 (2014) (stating that "[a] defendant asserting violation of his public trial rights must show that a closure occurred.").

It is clear that "[a] closure occurs 'when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave.' " *Smith*, 181 Wn.2d at 520 (quoting *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011)). But such a closure of the entire courtroom is not the only action that constitutes a closure. A closure also occurs when the public is excluded from particular proceedings within a courtroom. *State v. Gomez*, No. 90329-8, 2015 WL 1590302, at *2 (Wash. Apr. 9, 2015); *Lormor*, 172 Wn.2d at 92. As a result, holding proceedings in areas inaccessible to the public, such as the judge's chambers, also qualifies as a closure.[5] *Id.*; *State v. Strode*, 167 Wn.2d 222, 226, 217 P.3d 310 (2009); *see also State v. Leyerle*, 158 Wn. App. 474, 483, 242 P.3d 921 (2010) (holding that proceedings conducted in a hallway adjacent to the courtroom were closed to the public).

The record here shows that the trial court neither barred the public from the courtroom during the sidebar conference nor held the conference in a physically inaccessible location. However, the entire purpose of a sidebar conference is to prevent anyone other than those present at the sidebar – an audience typically limited to the judge, counsel, and perhaps court staff –

---

[5] Although our Supreme Court held in *Smith* that sidebar conferences on evidentiary matters do not implicate the public trial right, it declined to review whether such conferences constituted a closure. 181 Wn.2d at 520-21.

from hearing what is being said. The question we must decide is whether preventing the public from hearing a proceeding rises to the level of a closure.[6]

To determine whether the trial court closed the proceedings, we examine whether the trial court's action actually impeded public scrutiny. *See, e.g., In re Pers. Restraint of Orange*, 152 Wn.2d 795, 808-09, 100 P.3d 291 (2004). In *State v. Andy*, our Supreme Court addressed closure in this manner, focusing on the question of whether public access actually was thwarted. 182 Wn.2d 294, 301-02, 340 P.3d 840 (2014). The court examined the impact of a sign placed outside the courtroom stating that the courtroom would be closed at times it was in fact still in session. *Id.* at 300-301. To determine whether this misleading placement of the sign was a closure, the court analyzed whether the public actually was excluded from the proceedings. The court noted that the trial judge made express findings that "the public was able to access the courtroom at all times during Andy's trial and that no member of the public was deterred" from entry. *Id.* at 301. The court concluded that where the trial court's action "presented no obstacle to members of the public who wished to attend the trial," there was no closure. *Id.* at 302.

Unlike the sign in *Andy*, the sidebar conference here presented a clear obstacle to public scrutiny of Anderson's challenges. While the trial court did not physically restrict access to the courtroom, it did prevent meaningful access to the proceedings by conducting the challenges for cause in a manner such that the public could not hear what was occurring. Taking juror challenges at sidebar in this way thwarts public scrutiny just as if they were done in chambers or

---

[6] Our Supreme Court in *Smith* suggested in dicta that the experience and logic test (discussed below) bears on the closure question. 181 Wn.2d at 520. However, the court in *Gomez* clarified that this test applies only to whether the public trial right attaches to a particular proceeding. 2015 WL 1590302, at *4 n.3.

outside the courtroom. We hold that the sidebar conference constituted a closure of the juror selection proceedings because the public could not hear what was occurring.

## C. IMPLICATION OF PUBLIC TRIAL RIGHT

### 1. General Principles

If a proceeding has been closed to the public, we next must determine whether that proceeding implicates the public trial right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." *Id.*

To address whether there was a court closure implicating the public trial right, we employ a two-step process. *State v. Wilson*, 174 Wn. App. 328, 335-37, 298 P.3d 148 (2013). First, we consider whether the particular proceeding at issue "falls within a category of proceedings that our Supreme Court has already acknowledged implicates a defendant's public trial right." *Id.* at 337; *see also Wise*, 176 Wn.2d at 11-12. Second, if the proceeding at issue does not fall within an acknowledged category implicating the public trial right, we determine whether the proceeding implicates the public trial right using the "experience and logic" test our Supreme Court adopted in *Sublett. Wilson*, 174 Wn. App. at 335.

### 2. Juror Challenges Distinguished from Voir Dire

Anderson argues that challenges for cause fall within a category of proceedings to which the public trial right attaches under existing case law. Anderson bases his argument on Supreme Court cases establishing that voir dire implicates a defendant's public trial right. *See, e.g., Wise*, 176 Wn.2d at 11; *Strode*, 167 Wn.2d at 227. He argues that challenges for cause are part of the

6

voir dire process and that the public trial right therefore attaches to such challenges as well. We disagree.

Contrary to Anderson's position, challenges for cause are not part of voir dire. In *Wilson*, we held that only the voir dire aspect of jury selection automatically implicates the public trial right. 174 Wn. App. at 338-40. We used the term "voir dire" as synonymous with the actual questioning of jurors, referring to the " 'voir dire' of prospective jurors who form the venire." *Wilson*, 174 Wn. App. at 338; *see also State v. Slert*, 181 Wn.2d 598, 605, 334 P.3d 1088 (2014) (plurality opinion quoting this language with approval). In *State v. Marks*, we relied in part on this language from *Wilson* in holding that peremptory challenges are not part of voir dire. 184 Wn. App. 782, 787-88, 339 P.3d 196, *petition for review filed*, No. 91148-7 (Wash. Dec. 29, 2014). Like the peremptory challenges at issue in *Marks*, challenges for cause constitute a distinct proceeding that does not involve the questioning of jurors. *See* CrR 6.4 (distinguishing voir dire from both peremptory challenges and challenges for cause).

Here, the record neither shows nor suggests that the sidebar conference involved any questioning of jurors. Because Anderson's challenges were not part of the actual questioning of jurors, they were not part of voir dire. Therefore, our Supreme Court has not yet addressed whether juror challenges for cause implicate the public trial right.

3.   Experience and Logic Test

Because our Supreme Court has not addressed the issue, we must apply the *Sublett* experience and logic test to determine whether the exercise of juror challenges for cause

implicates a defendant's public trial right.[7] This test requires us to consider (1) whether the process and place of a proceeding historically have been open to the press and general public (experience prong), and (2) whether access to the public plays a significant positive role in the functioning of the proceeding (logic prong). *Sublett*, 176 Wn.2d at 73. If the answer to both prongs is yes, then the defendant's public trial right "attaches" and a trial court must consider the *Bone-Club* factors before closing the proceeding to the public. *Sublett*, 176 Wn.2d at 73.

### a. Application of Test to Sidebar Conferences

In *Smith*, our Supreme Court concluded after applying the experience and logic test that the sidebar conference in that case did not implicate the public trial right. 181 Wn.2d at 511. The court broadly stated that "sidebars do not implicate the public trial right." *Id.* However, *Smith* involved legal argument on evidentiary issues at a sidebar conference. *Id.* at 512. The court framed the issue as addressing whether "sidebar conferences *on evidentiary matters*" implicate the right. *Id.* at 513 (emphasis added). We view the Supreme Court's holding in *Smith* as limited to that issue, and rule that *Smith* is not controlling here. Therefore, we must apply the experience and logic test.

### b. Experience Prong

The experience prong of the *Sublett* test asks us to examine whether a particular practice or proceeding historically has been accessible to the public in the courts of this state. *See Sublett*, 176 Wn.2d at 73. Because most of the opinions referencing juror challenges for cause

---

[7] In *Marks* we applied the experience prong and held that the exercise of peremptory juror challenges does not implicate the public trial right. 184 Wn. App. at 788-89. However, whether the exercise of juror challenges *for cause* implicates the public trial right involves a different issue.

show that historically such challenges were made in open court, we conclude that the experience prong supports a holding that such challenges do implicate the public trial right.

It is difficult to apply the experience prong to juror challenges for cause because the evidence regarding how trial courts historically have handled such challenges is slim. We are not aware of any cases or secondary authorities that discuss whether the traditional practice over the years has been to address for cause juror challenges in public or in private, or even whether there was a traditional practice.

However, what evidence we do have indicates that juror challenges for cause historically have been addressed in public. The published opinions of Washington courts show that challenges for cause have been exercised and ruled on in open court throughout the history of our state. *See, e.g.*, *State v. Beskurt*, 176 Wn.2d 441, 447, 293 P.3d 1159 (2013); *State v. Davis*, 141 Wn.2d 798, 836, 10 P.3d 977 (2000); *State v. Moser*, 37 Wn.2d 911, 917, 226 P.2d 867 (1951); *State v. Stentz*, 30 Wash. 134, 135-37, 70 P. 241 (1902); *State v. Murphy*, 9 Wash. 204, 206-08, 37 P. 420 (1894); *State v. Biles*, 6 Wash. 186, 188, 33 P. 347 (1893); *see also State v. Parnell*, 77 Wn.2d 503, 504, 463 P.2d 134 (1969); *Wash. v. City of Seattle*, 170 Wash. 371, 373, 16 P.2d 597 (1932); *State v. Croney*, 31 Wash. 122, 128, 71 P. 783 (1903); *State v. Rutten*, 13 Wash. 203, 204-07, 43 P. 30 (1895); *State v. Wilson*, 16 Wn. App. 348, 352, 555 P.2d 1375 (1976).

Challenges for cause also sometimes have been made and ruled on at sidebar, particularly in recent years. *See, e.g.*, *State v. Love*, 176 Wn. App. 911, 915, 309 P.3d 1209 (2013), *review granted in part*, 181 Wn.2d 1029 (2015). But it appears that at least in earlier times, challenges for cause at sidebar were quite rare. Only one older civil case provides a possible example of a challenge for cause exercised at sidebar, and in that case there was a compelling reason to depart

from the usual procedure – the argument for dismissing the juror would have improperly exposed prospective jurors to information about the defendants' liability insurance. *Popoff v. Mott*, 14 Wn.2d 1, 9, 126 P.2d 597 (1942). Overall, the weight of historical practice favors exercising of challenges for cause in open court.

Division Three of our court in *Love* held that challenges for cause do not satisfy the experience prong, stating that "there is no evidence suggesting that historical practices *required* [for cause] challenges to be made in public." 176 Wn. App. at 918 (emphasis added). The court's analysis in *Love* seems to redefine the *Sublett* experience prong as an inquiry into whether challenges for cause historically were *required* to be made in open court. But the court in *Love* cited no authority for this interpretation of the experience prong analysis. 176 Wn. App. at 918.

Our reading of the relevant cases indicates that the experience prong actually involves asking whether the practice *traditionally* has been open to the public, whether required or not. *E.g., Smith*, 181 Wn.2d at 516 (stating that "[w]ithout any evidence the public has *traditionally participated* in sidebars, the experience prong cannot be met" (emphasis added)). This reading is consistent with the United States Supreme Court's analysis in *Press-Enterprise Co. v. Superior Court* (*Press* II), 478 U.S. 1, 8, 10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986), which guided our Supreme Court in *Sublett*. 176 Wn.2d at 73-74. The Court in *Press* II analyzed whether there was a "tradition of accessibility" surrounding the proceeding at issue, 478 U.S. at 8, 10, and this is the proper question to ask here as well. Accordingly, we reject the experience prong analysis in *Love* and look to traditional practice, rather than historical requirements.

In light of what appears to be the historical practice in Washington courts, the experience prong favors a holding that challenges for cause implicate the public trial right.

      b.    Logic Prong

The logic prong of the *Sublett* test asks us to examine whether public access plays a " 'significant positive role' " in the functioning of the practice or procedure at issue. *Sublett*, 176 Wn.2d at 73 (quoting *Press* II, 478 U.S. at 8). Because public access provides a check against both actual and apparent abuse of challenges for cause, we hold that the logic prong supports extension of the public trial right to the exercise of challenges for cause.

Under the logic prong, we look to the "values served by open courts" and "must consider whether openness will 'enhance[ ] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.' " *Sublett*, 176 Wn.2d at 74-75 (quoting *Press-Enterprise Co. v. Superior Court* (*Press* I), 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)). We have held that this basic fairness is enhanced where "the public's mere presence passively contributes to the fairness of the proceedings, such as deterring deviations from established procedures, reminding the officers of the court of the importance of their functions, and subjecting judges to the check of public scrutiny." *State v. Bennett*, 168 Wn. App. 197, 204, 275 P.3d 1224 (2012) (emphasis omitted); *see also State v. Sadler*, 147 Wn. App. 97, 116, 193 P.3d 1108 (2008) ("[T]he purposes underlying a *public* trial include ensuring that the public can see that the accused is dealt with fairly and reminding officers of the court of their responsibilities to assure that the defendant receives a fair trial" (citation omitted)). [8]

---

[8] In *Sublett*, our Supreme Court expressly rejected our analytical framework in *Sadler*, pointing to that opinion as an example of the categorical distinction approach we previously employed.

We previously have found that public scrutiny is essential where challenges to prospective jurors may be abused. *See Sadler*, 147 Wn. App. at 116 (holding that *Batson*[9] proceedings implicate the public trial right because "the public has a vital interest" in the issue of "whether the prosecutor has excused jurors because of their race"). Challenges for cause may be less prone to arbitrary or improper exercise than peremptory challenges because a party must offer, and the trial court must find, a legal reason for dismissing a juror for cause. However, the public still has a vital interest in determining whether parties are making, and the trial court is ruling on, challenges for cause for legitimate reasons.

Further, challenges for cause exist specifically to ensure fairness in jury selection and, ultimately, a fair trial before an impartial jury. *See State v. Fire*, 145 Wn.2d 152, 164, 34 P.3d 1218 (2001). Addressing such challenges in public enhances the appearance of fairness in this process, and may well enhance actual fairness by reminding counsel of the importance of the juror challenge process, and subjecting the trial court's rulings to public scrutiny.

In *Love*, Division Three of our court held that challenges for cause did not satisfy the logic prong. 176 Wn. App. at 919-20. The court seemed to indicate that because challenges for cause involve legal questions, public oversight is of limited importance. *See id.* at 920 n.7. But we have noted that "even in proceedings involving purely legal matters, the public's presence

---

176 Wn.2d at 72; *see also State v. Halverson*, 176 Wn. App. 972, 977 n.2, 309 P.3d 795 (2013), *review denied*, 179 Wn.2d 1016 (2014). However, the Court in *Sublett* noted no deficiencies in our discussion of the values served by public scrutiny or on the value of publicity in deterring the abuse of challenges during jury selection. Further, the court denied review of *Sadler* after deciding *Sublett*. 176 Wn.2d at 1032.

[9] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) (holding that a party cannot exercise peremptory juror challenges on the basis of race).

may ensure the fairness of such proceedings." *Bennett*, 168 Wn. App. at 204. While the court in *Love* reasoned that making a record of the challenges "satisfies the public's interest in the case and assures that all activities were conducted aboveboard," it seemed to discount the idea that public oversight of the challenges and associated argument would enhance the appearance of fairness or deter deviation from established procedures. 176 Wn. App. at 920.

Because our Supreme Court has indicated that the appearance of fairness and deterrence of deviation from established procedures are important functions of the public trial right, we disagree with Division Three and conclude that public access plays a significant positive role in the functioning of juror challenges for cause. Therefore, the logic prong of the *Sublett* test indicates that challenges for cause implicate the public trial right.

Both the experience and logic prongs of the *Sublett* test support a holding that the exercise of juror challenges for cause should occur in open court. Accordingly, we hold that juror challenges for cause implicate a criminal defendant's public trial right.

D.    JUSTIFICATION FOR CLOSURE.

If the trial court has closed a proceeding to the public and that proceeding implicates the public trial right, we must determine whether the trial court was justified in closing the proceeding. In most cases, the trial court must expressly consider the five *Bone-Club* factors on the record. *Smith*, 181 Wn.2d at 520 (stating that "[a] closure unaccompanied by a *Bone-Club* analysis on the record will almost never be considered justified").

Our Supreme Court has recognized that in extremely rare circumstances, a closure could be justified without a *Bone-Club* analysis if an examination of the record shows that the trial court "effectively weighed the defendant's public trial right against other compelling interests."

13

*Smith*, 181 Wn.2d at 520. The court found no public trial right violation under such circumstances in *State v. Momah*, 167 Wn.2d. 140, 156, 217 P.3d 321 (2009). But the court has acknowledged that it is unlikely to ever again see a case like *Momah. Smith*, 181 Wn.2d at 520.

Here, the trial court did not expressly consider the *Bone-Club* factors before holding the sidebar conference. Further, there is no basis in the record for concluding that these factors effectively have been satisfied through a balancing process. Therefore, we hold that the trial court was not justified in hearing juror challenges for cause at a sidebar conference.

## CONCLUSION

A sidebar conference addressing juror challenges for cause constitutes a closure of the juror selection proceedings, and implicates a defendant's public trial right. Here, the trial court did not conduct a *Bone-Club* analysis or otherwise provide justification for not addressing for cause juror challenges in open court. Accordingly, we hold that the trial court erred in addressing juror challenges for cause at a sidebar conference.

We reverse Anderson's convictions and remand for a new trial.

MAXA, P.J.

I concur:

ZEE, J.

MELNICK, J. (concurrence) — I concur with the result the majority reaches. However, I write separately to supplement the majority's analysis under the "experience and logic" test. *See* Majority at 7-8 (analyzing *State v. Sublett*, 176 Wn.2d 58, 73-74, 292 P.3d 715 (2012)).

I believe there is additional authority in CrR 6.4 to support the majority's position. This rule delineates procedures for selecting a jury. Specifically, after examination, when challenging a juror for cause, a judge may excuse for cause that juror if grounds for the challenge exist. CrR 6.4(c).[10] If, however, the challenge for cause is denied by the opposing party, "the court shall try the issue and determine the law and the facts." CrR 6.4(d)(1). If the challenge is tried, the rules of evidence apply and the challenged juror may be called as a witness, subject to cross-examination. CrR 6.4 (d)(2). If the court finds the challenge is sufficient or true, the juror shall be excluded. CrR 6.4(d)(2). Conversely, "if not so determined or found otherwise," the challenge shall be disallowed. CrR 6.4(d)(2).

Because both the Sixth Amendment to the United States Constitution and article 1, section 22 of the Washington Constitution guarantee a defendant the right to a public trial and because

---

[10] CrR 6.4(c)(2) references RCW 4.44.150 through 4.44.200 as governing challenges for cause. RCW 4.44.190 states,

> [a] challenge for actual bias may be taken for the cause mentioned in RCW 4.44.170(2). But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon what he or she may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially.

challenges for cause involve trials, a trial court must either hold the trials in open court or utilize the five part *Bone-Club*[11] test.

Melnick, J.

Melnick, J.

---

[11] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).