# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45497-1-II |
| Respondent, | |
| v. | |
| CALVERT RAUB ANDERSON, JR., | PUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Calvert Anderson appeals his convictions for third degree assault and obstructing a law enforcement officer. In a previous opinion, we held that the trial court violated Anderson's constitutional right to a public trial by allowing counsel to make juror challenges for cause at a sidebar conference. *State v. Anderson*, 187 Wn. App. 706, 350 P.3d 255, *cause remanded*, 184 Wn.2d 1009 (2015). Our holding was based on determinations that (1) a sidebar conference outside the hearing of the public was a courtroom closure, and (2) juror challenges for cause implicated the public trial right under the experience and logic test. *Id.* at 714, 721. The State filed a petition for review in the Supreme Court.

The Supreme Court subsequently decided *State v. Love*, 183 Wn.2d 598, 354 P.3d 841 (2015), *cert. denied*, 136 S. Ct. 1524 (2016). In *Love*, the court held that exercising for cause juror challenges orally at a sidebar and exercising preemptory juror challenges silently on paper did not constitute courtroom closures triggering the defendant's public trial right because the questioning of jurors was done in public, the exercise of juror challenges was visible to observers

in the courtroom, and the juror challenges were made on the record. *Id*. at 607. Following its decision in *Love*, the Supreme Court granted review in this case and remanded to this court for reconsideration in light of *Love*. *Anderson*, 184 Wn.2d 1009 (2015).

We now hold that under *Love*, there was no courtroom closure here because the questioning of jurors occurred in open court, the parties' exercise of juror challenges was visible to courtroom observers, and the trial court summarized the sidebar proceedings on the record and in open court. As a result, the trial court did not violate Anderson's public trial right and we affirm Anderson's convictions.

## FACTS

The State charged Anderson with third degree assault and obstructing a law enforcement officer after he scuffled with police officers. A jury convicted Anderson of both crimes.

During voir dire, the questioning of jurors occurred in open court. Anderson challenged four prospective jurors for cause at a sidebar conference, which the judge told the jurors they would not be able to hear. At the sidebar conference, the trial court dismissed the four challenged prospective jurors. The trial court later dismissed a fifth prospective juror for cause on its own initiative at a second sidebar conference. The trial court then announced in open court which prospective jurors would be serving on the jury.

No transcription of either sidebar conference appears in the record, but the trial court later noted the challenges and resulting dismissals for the record:

> At a sidebar before we took the morning recess, I excused for cause, based upon the challenge by [defense counsel], for cause Jurors 5, 15, 18 and 34. Following the second questioning period by [defense counsel], and before we selected the jury, I excused Juror No. 27 for cause.

No. 45497-1-II

Report of Proceedings (RP) at 12-13.  The trial court did not conduct a *Bone-Club* analysis before the sidebar conferences.

This case returns to us on remand from the Supreme Court.

ANALYSIS

A.    *LOVE* ANALYSIS

The question in this case is whether a courtroom closure occurred when the trial court considered juror challenges at a sidebar conference.  In our previous opinion, we held that the sidebar conference constituted a closure of the juror selection proceedings because the public could not hear what was occurring.  *Anderson,* 187 Wn. App. at 714.  In light of *Love*, we now hold that no courtroom closure occurred in this case.

In *Love*, the trial court and the parties questioned prospective jurors in open court during voir dire examination.  183 Wn.2d at 602.  When the questioning concluded, counsel approached the bench to discuss challenges for cause in the presence of a court reporter.  *Id.*  Although the discussion and ruling on the juror challenges occurred at a sidebar conference, the exchange was on the record and visible to observers in the courtroom.  *Id.*  The parties then exercised preemptory challenges by striking names from a written list of jurors.  *Id*. at 602-603.  Love argued that the procedure used for exercising juror challenges "effectively 'closed' the courtroom, though it was unlocked and open, because the public was not privy to the challenges in real time."  *Id*. at 604.

The Supreme Court stated without elaboration that the public trial right attaches to jury selection, including for cause and peremptory challenges.[1] *Id*. at 605-606. The court then addressed whether *Love* had shown that a courtroom closure had occurred. The court noted that it had reversed convictions for two types of closures. The first type of closure occurs when the courtroom is completely and purposefully closed to spectators. *Id*. at 606. Love did not allege that the courtroom was closed in this traditional way. *Id*.

The second type of closure occurs where a portion of the trial is held in a place that is inaccessible to spectators. *Id*. Love argued that "the possibility that spectators at his trial could not hear the discussion about for cause challenges or see the struck juror sheet used for preemptory challenges rendered this portion of his trial inaccessible to the public." *Id*.

The court disagreed that addressing for cause juror challenges outside the hearing of spectators or exercising preemptory challenges on a struck juror sheet constituted a courtroom closure. The court stated:

> [T]he public had ample opportunity to oversee the selection of Love's jury because no portion of the process was concealed from the public; no juror was questioned in chambers. To the contrary, observers could watch the trial judge and counsel ask questions of potential jurors, listen to the answers to those questions, see counsel exercise challenges at the bench and on paper, and ultimately evaluate the empaneled jury. The transcript of the discussion about for cause challenges and the struck juror sheet showing the preemptory challenges are both publically available. The public was present for and could scrutinize the selection of Love's jury from start to finish, affording him the safeguards of the public trial right missing in cases where we found closures.

*Id*. at 607.

---

[1] The Supreme Court has confirmed that the public trial right extends to the entire jury selection process, including peremptory juror challenges. *State v. Marks*, 185 Wn.2d 143, 145, 368 P.3d 485 (2016).

B.       APPLICATION OF *LOVE*

The facts here are nearly identical to the facts in *Love*. In both cases, prospective jurors were questioned in open court during voir dire and the public could see for cause challenges being made at sidebar. One difference is that in *Love*, the trial court addressed the juror challenges for cause with a court reporter present to transcribe the proceedings. 183 Wn.2d at 602. Here, no court reporter transcribed the sidebars at which the trial court and counsel addressed juror challenges. Therefore, a transcript of the discussion of challenges for cause is not publicly available. Instead, the trial court summarized on the record in open court what had happened at sidebar.

Despite this factual difference, *Love* controls here. The court in *Love* did not hold that the presence of a court reporter at a sidebar conference was required in order to avoid a courtroom closure. The key factors for the court were that the public could (1) hear the voir dire questioning that provided the basis for the challenges for cause and (2) observe the sidebar conference while it was occurring. *Id*. at 607. Both factors were present here.

Further, anyone listening to the questioning of the jurors would have been able to easily discern why the trial court dismissed the five jurors for cause. Juror 5 was a corrections officer who stated that he would start off with an assumption that the defendant was guilty. Juror 15's son was a police officer and two of the State's witnesses were the son's fellow officers, and Juror 15 thought he would show partiality toward them. Juror 18 stated that because of a prior experience serving as a juror in an attempted murder trial, he could never render a not guilty verdict unless the defendant proved he was not even partially responsible for violence toward another person. Juror 27's father was killed by a drunk driver, and he stated that because of his

strong emotions regarding alcohol he would not be able to be fair if the case involved the defendant's consumption of alcohol. And Juror 34 had been married to a police officer who cheated on her and beat her, and she had a firm conviction that this would not be a good case for her to serve on as a juror because she could not be fair.

We hold that no courtroom closure occurred under the facts here. As in *Love*, the juror questioning took place in open court. As in *Love*, the sidebar conference in which the trial court addressed for cause juror challenges was "visible to observers in the courtroom." 183 Wn.2d at 602. Unlike in *Love*, a transcript of the proceedings was not available to the public. But the trial court stated on the record in open court the results of the sidebar conference. Given these facts, the trial court's placing what occurred at sidebar on the record meant that "[t]he public was present for and could scrutinize the selection of [the] jury from start to finish," thereby affording Anderson the safeguards of the public trial right. *Id*. at 607.

On reconsideration following remand from the Supreme Court, we hold that the trial court did not violate Anderson's public trial right and therefore we affirm his convictions.

_____
MAXA, A.C.J.

I concur:

_____
LEE, J.

6

No. 45497-1-II

MELNICK, J. — (concurrence) The majority's reasoning is generally consistent with my opinion in *State v. Effinger*, No. 46445-4-II (Wash. Ct. App. June 21, 2016). To the extent that there are conflicts in the reasoning of the two cases, I adhere to the rationale and analysis employed in *Effinger*.

_____
Melnick, J.

7