# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46140-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| KEVIN RAY CASE, | |
| Appellant. | |

MAXA, C.J. — Kevin Case appeals his conviction of felony violation of a no-contact order (NCO) and his sentence.

Violation of an NCO is a felony if the defendant has at least two previous convictions for violating a court order issued under one of several specific RCW chapters. Former RCW 26.50.110(5) (2013). In a previous opinion, we reversed Case's conviction because although he stipulated that he had two prior convictions for NCO violations, he presented no evidence to the court that the prior convictions were for court orders issued under one of the specified RCW chapters. *State v. Case*, 189 Wn. App. 422, 358 P.3d 432 (2015), *rev'd*, 187 Wn.2d 85, 384 P.3d 1140 (2016). The Supreme Court subsequently reversed our decision, holding that Case's stipulation was sufficient to establish that he had two prior qualifying convictions under RCW 26.50.110(5). 187 Wn.2d at 91-92.

We now address Case's additional arguments that we did not consider in our earlier opinion. We hold that (1) the trial court did not violate Case's public trial right by addressing the

State's juror challenges for cause and other issues in sidebar conferences, (2) the trial court's sidebar conferences did not violate Case's right to be present during critical stages in the trial, (3) Case's ineffective assistance of counsel claims fail because he fails to demonstrate prejudice, and (4) the trial court erred in including Case's prior convictions in his offender score without proof of those convictions, although this issue may be moot. Accordingly, we affirm Case's conviction, but we remand for the trial court to determine whether the sentencing issue is moot or for resentencing.

## FACTS

In December 2013, the State charged Case with felony violation of an NCO. The charge was based on an incident in which Case was observed standing over and yelling at a woman crouched in the doorway near a bus terminal.

During jury selection, the trial court held two sidebar conferences. The conferences were not recorded, but the trial court memorialized the discussions on the record. The first sidebar occurred after the first voir dire period, and the court stated that "there really wasn't any discussion of substance there." Report of Proceedings (RP) (March 17, 2013) at 7. The second sidebar occurred before peremptory challenges, and the court stated,

> [T]here was a challenge for one juror for cause, and that was juror number 16. It was actually the State that made its challenge, although the defense certainly agreed. The basis for that challenge was her answers about how she would evaluate evidence and who she might be partial to.

RP (March 17, 2013) at 7. Defense counsel then reminded the court that it also had denied the State's for cause challenge to juror 19 based on that juror's association with defense counsel's family.

During trial, the trial court held separate sidebars on five issues: (1) Case's objection to the admission of a recording of a 911 call on hearsay grounds; (2) Case's objection to the

2

admission of the victim's identification card also on hearsay grounds; (3) Case's objection to the admission of three items of clothing on chain of custody grounds; (4) formalizing a stipulation regarding Case's prior convictions for violating no-contact orders; and (5) correcting an error in the jury instructions the court had just read to the jury. No transcription of any of the sidebar conferences appears in the record, but the trial court later noted the subject matter of the sidebars for the record.

Officer Jeff Herbig testified about his investigation of the incident, including his contact with Case. During his testimony, the following exchange took place:

> Q: Did [Case] make any statements with regard to his contact with [the victim]?
>
> A: He essentially stated that he denied having any contact with her, and when I pointed out the obvious presence of not only civilian witnesses but security guards and other disinterested parties that would have no basis for, in my opinion, lying or fabricating, he said that they were essentially lying, and at that point I terminated my questioning because I didn't feel we were going to have any sort of meaningful interaction.

RP (March 17, 2013) at 46-47. Defense counsel did not object to this testimony.

During voir dire and trial, Case was in custody and wearing a leg brace. The trial court noted that the leg brace was concealed and did not show. Defense counsel did not object to Case wearing a leg brace.

The jury found Case guilty as charged. The trial court sentenced him to 55.5 months in confinement and 4.5 months of community custody. Case appeals his conviction and sentence.

ANALYSIS

A.    PUBLIC TRIAL RIGHT

Case argues that the trial court violated his public trial right when, during sidebar conferences, the court addressed (1) juror challenges for cause, (2) non-substantive issues during

3

voir dire, (3) the admission of various pieces of evidence, (4) the specifics of the stipulation regarding prior convictions, and (5) an error made in the trial court's jury instructions. We disagree.

1. Legal Background

Article I, section 22 of the Washington Constitution guarantees a criminal defendant the right to a public trial. *State v. Love*, 183 Wn.2d 598, 604, 354 P.3d 841 (2015). And article I, section 10 guarantees the public that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." These constitutional provisions provide a "public trial right." *Love*, 183 Wn.2d at 605. We review public trial right claims de novo. *Id.* at 604.

We apply a three-step analysis in assessing a claimed violation of public trial rights: (1) whether the public trial right attaches to the proceeding at issue; (2) if the right attaches, whether the courtroom was closed; and (3) whether such closure was justified. *Id.* at 605. "The appellant carries the burden on the first two steps; the proponent of the closure carries the third." *Id.*

2. Juror Challenges for Cause

The trial court held a sidebar conference to address the State's challenge for cause of jurors 16 and 19. The public trial right attaches to juror challenges. *State v. Schierman*, 192 Wn.2d 577, 609, 438 P.3d 1063 (2018); *Love*, 183 Wn.2d at 605-606. Therefore, the issue here is whether this sidebar conference constituted a "closure" for purposes of the public trial right. *See Love*, 183 Wn.2d at 606.

The Supreme Court held in *Love* that when the actual questioning of jurors occurred in public, discussing juror challenges at a sidebar conference did not constitute a courtroom closure. *Id.* at 607. The court stated,

> [T]he public had ample opportunity to oversee the selection of Love's jury because no portion of the process was concealed from the public; no juror was questioned

in chambers. To the contrary, observers could watch the trial judge and counsel ask questions of potential jurors, listen to the answers to those questions, see counsel exercise challenges at the bench and on paper, and ultimately evaluate the empaneled jury. The transcript of the discussion about for cause challenges and the struck juror sheet showing the peremptory challenges are both publicly available. The public was present for and could scrutinize the selection of Love's jury from start to finish, affording him the safeguards of the public trial right missing in cases where we found closures of jury section.

*Id.*

In *Love*, the trial court's discussion of juror challenges at sidebar was transcribed by a court reporter. *Id.* at 602. However, this court in *State v. Anderson* held that a transcription of the sidebar was not required to satisfy the public trial right for juror challenges discussed at sidebar as long as the trial court summarized in open court what had occurred in the sidebar. 194 Wn. App. 547, 551-53, 377 P.3d 278 (2016). The court noted that the key factors for the court's determination in *Love* that no closure had occurred was that "the public could (1) hear the voir dire questioning that provided the basis for the challenges for cause and (2) observe the sidebar conference while it was occurring." *Anderson*, 194 Wn. App. at 552. Because those factors were present in *Anderson*, the court held that no closure had occurred when juror challenges were made in a sidebar conference. *Id.* at 552-53.

*Love* and *Anderson* control here. All juror questioning occurred in public. Juror challenges were discussed at sidebar, but the public could watch the sidebar conference as it occurred. And the trial court memorialized in open court what had been discussed at sidebar. Under these facts, we hold that discussing juror challenges in a sidebar conference did not constitute a courtroom closure and therefore did not violate Case's public trial right.

3. Non-Substantive Voir Dire Discussions

The trial court held a sidebar conference after the first voir dire questioning period, but the record does not reveal what specifically was addressed. The trial court stated only that "there

really wasn't any discussion of substance there." RP (March 17, 2013) at 7.

The Supreme Court's plurality opinion in *State v. Slert* held that the defendant has the burden of providing an adequate record to establish a violation of the public trial right, and in the absence of an adequate record, a court will not infer that the trial court violated the constitution. 181 Wn.2d 598, 608, 334 P.3d 1088 (2014); *see also State v. Koss*, 181 Wn.2d 493, 501-03, 334 P.3d 1042 (2014) (holding that the defendant bears the responsibility to provide a record showing that a court closure has occurred).

Here, Case fails to provide us with a sufficient record to determine what happened at this sidebar conference. And there is no indication that the sidebar involved any discussion that would implicate the public trial right. Accordingly, we hold that Case has not established a public trial right violation.

4. Evidentiary Issues

Three of the trial court's sidebar conferences addressed the admissibility of evidence. The Supreme Court in *State v. Smith* held that sidebars addressing evidentiary matters do not implicate a defendant's public trial right. 181 Wn.2d 508, 519, 334 P.3d 1049 (2014). Accordingly, we hold that these sidebars did not violate Case's public trial right.

5. Stipulation Regarding Prior Convictions

The trial court conducted a sidebar conference to address the formalization of the form of a stipulation regarding Case's prior convictions for violating a court order. The court stated, "I'll indicate first that at the last sidebar just a moment ago the issue was the State wanted to formalize the form of the stipulation, get everybody to sign off on that. So I said I'd give them time to do that." RP (March 17, 2013) at 59.

The stipulation the trial court discussed at sidebar involved evidence that was presented to the jury. As a result, this discussion regarding evidentiary matters did not implicate the public trial right under *Smith*, 181 Wn.2d at 519. And even if the stipulation did not involve evidentiary matters, the sidebar appears to have been limited to a traditional sidebar subject: seeking the trial court's input on the form of a factual stipulation. The court in *Smith* suggested that sidebars addressing "traditional subject areas" do not implicate the public trial right. 181 Wn.2d at 516 n.10; *see also State v. Whitlock*, 188 Wn.2d 511, 522, 396 P.3d 310 (2017). Accordingly, we hold that this sidebar did not violate Case's public trial right.

6. Jury Instruction Error

The trial court held a sidebar conference to address an error that had been made in the trial court's jury instructions. Our Supreme Court in *Koss* examined whether a defendant's public trial right attached to an in-chambers conference about jury instructions that occurred before jury deliberations. 181 Wn.2d at 499-501. The court stated,

> "We are aware that, quite often, counsel discuss the instructions with the court during an informal proceeding. But before instructing the jury, counsel is to be given the opportunity to object in the absence of the jury. CrR 6.15(c). Any objections to the instructions, as well as the grounds for the objections, must be put in the record to preserve review. . . . We have found no challenges to . . . the rule or, prior to the rule's enactment, any case requiring the discussion of jury instructions to be held in open court."

*Id.* at 500 (quoting *State v. Sublett*, 176 Wn.2d 58, 75-76, 292 P.3d 715 (2012). The court then applied this reasoning and held that the judge and counsel's informal in-chambers discussion of jury instructions did not violate the defendant's right to a public trial. *Koss*, 181 Wn.2d at 501.

Although this case involves a sidebar conference instead of an in-chambers discussion, we follow *Koss* and hold that this sidebar did not violate Case's public trial right.

B.     RIGHT TO BE PRESENT

Case argues that the trial court's sidebar conferences violated his right to be present during every critical stage in the trial. We disagree.

1.     Legal Principles

Under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington Constitution, a criminal defendant has a fundamental right to be present at all "critical stages" of trial. *Love*, 183 Wn.2d at 608. However, a defendant's right to be present is not absolute. *State v. Irby*, 170 Wn.2d 874, 881, 246 P.3d 796 (2011). A defendant has the right to be present at a proceeding only when there is a reasonably substantial relationship between his or her presence and the opportunity to defend against a charge. *Id.* And a defendant does not have the right to be present if his/her presence would be useless or not beneficial. *Id.* We review whether a defendant's constitutional right to be present has been violated de novo. *Id.* at 880.

2.     State's For Cause Juror Challenges

During voir dire, the trial court held a sidebar conference that addressed the State's challenge for cause of two jurors. Jury selection is a critical stage of trial to which the right to be present attaches. *Love*, 183 Wn.2d at 608. We assume without deciding that discussion regarding juror challenges, which is a part of jury selection, may constitute a critical stage of trial.

However, this fact does not mean that Case's right to be present was violated under the circumstances here. Case was present in the courtroom during the entire jury selection process, and therefore had the opportunity to hear all questioning that formed the basis for any future juror challenges. And there is no evidence that he did not have the opportunity to exercise his

right to consult with his counsel or otherwise be involved in counsel's response to the State's for cause challenges. The sidebar conference did not deprive Case of the " 'power . . . to give advice or suggestion or even to supersede' " his counsel. *Irby*, 170 Wn.2d at 883 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S. Ct. 330, 78 L. Ed. 674 (1934)).

The Supreme Court in *Love* rejected a similar right to be present claim when the defendant was not present at sidebar conferences involving juror challenges. 183 Wn.2d at 608. The court stated, "Love was present in the courtroom during all of voir dire, including potential jurors' answers to questions that form the basis for challenges. Nothing suggests that Love could not consult with his attorney about which jurors to challenge or meaningfully participate in the process." *Id.*; *see also State v. Effinger*, 194 Wn. App. 554, 565, 375 P.3d 701 (2016) (rejecting similar right to be present claim).

We hold that under the facts here, the sidebar conference regarding for cause juror challenges did not violate Case's right to be present during jury selection proceedings.

3.    Other Sidebar Conferences

The trial court's other sidebar conferences involved a non-substantive discussion during voir dire, evidentiary objections, a factual stipulation, and correcting an error in the jury instructions. In *Irby*, the Supreme Court held that a defendant has no right to be present at proceedings involving " 'legal' " or " 'ministerial' " matters. 170 Wn.2d at 881-82 (quoting *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 484, 965 P.2d 593 (1998)). All of the sidebars here fall into one of those categories. Non-substantive discussions during voir dire and discussions regarding the form of a factual stipulation involve ministerial matters. Argument on the admission of evidence and discussions regarding jury instructions involve legal matters. Accordingly, we hold that the right to be present did not attach to these sidebar conferences.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

Case argues that his defense counsel provided ineffective assistance by failing to object to Case's restraint in a leg brace during trial and failing to object to the police officer's testimony that allegedly commented on the credibility of Case and other witnesses. We disagree.

1.     Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant's right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). We review claims of ineffective assistance of counsel de novo. *Id.*

To prevail on an ineffective assistance claim, the defendant must show that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Id.* at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 458. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Id.* Reasonable probability in this context means a probability sufficient to undermine confidence of the outcome of the trial. *Id.*

2.     Failure to Object to Leg Brace

Case argues that his counsel was ineffective in failing to object to his restraint at trial with a leg brace. We reject this claim.

A defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances. *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999). Shackling or handcuffing infringes on a defendant's right to a fair trial for several reasons, including that it violates a defendant's presumption of innocence. *Id.* at 844. Generally,

10

a trial judge may allow restraints on a defendant only when necessary to prevent injury, disorderly conduct, or escape and based on specific facts set forth in the record. *State v. Jaime*, 168 Wn.2d 857, 865, 233 P.3d 554 (2010). Here, the trial court did not state a basis for allowing the leg brace to be placed on Case.

In *In re Pers. Restraint of Davis*, the Supreme Court stated that defense counsel may have an obligation to object or request a curative instruction regarding shackling. 152 Wn.2d 647, 699, 101 P.3d 1 (2004). However, even assuming without deciding that defense counsel was deficient in not objecting to Case's leg brace, there is no indication that Case's leg brace affected the outcome of the trial. Before trial, the trial court specifically stated: "I'll just go on to say on the record it's my understanding that the leg brace is concealed, that it doesn't show." RP (March 17, 2013) at 5. The record does not show, and Case does not argue, that the concealment of his leg brace changed throughout the trial. Therefore, there is no evidence that the jury saw Case's leg brace. If the jury does not see a defendant's restraints, he cannot establish prejudice. *See State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998).

Case cannot show that the outcome of his case would have been different if his defense counsel had objected to his leg brace. Therefore, we reject Case's ineffective assistance of counsel claim on this basis.

3. Failure to Object to Officer Testimony

Case argues that officer Herbig improperly gave an opinion regarding Case's guilt and that his defense counsel provided ineffective assistance by failing to object to that testimony. We reject this claim.

The general rule is that no witness can testify to an opinion that the defendant is guilty, either by direct statement or inference. *State v. Quaale*, 182 Wn.2d 191, 197, 340 P.3d 213 (2014). Here, Herbig testified as follows:

> Q: Did [Case] make any statements with regard to his contact with [the victim]?
>
> A: He essentially stated that he denied having any contact with her, and when I pointed out the obvious presence of not only civilian witnesses but security guards and other disinterested parties *that would have no basis for, in my opinion, lying or fabricating, he said that they were essentially lying, and at that point I terminated my questioning because I didn't feel we were going to have any sort of meaningful interaction.*

RP (March 17, 2013) at 46-47 (emphasis added). Case argues that the italicized portion of Herbig's statement was an opinion that his denial was a lie and that the testimony of the other witnesses was the truth.

This testimony presented Herbig's opinion that the disinterested parties had no basis for lying, but Herbig did not comment on Case's guilt. Instead, he reported that Case thought the other witnesses were lying and that there was no point in continuing the interview. This testimony merely reported on Herbig's interaction with Case and did not imply that Case was guilty. As a result, even if defense counsel was deficient in failing to object, there is no indication that the trial court would have sustained the objection. Therefore, Case cannot show that that the outcome of his case would have been different if his defense counsel had objected. Therefore, we reject Case's ineffective assistance of counsel claim on this basis.

D.    SENTENCING ERROR

Case argues that the trial court erred by considering his prior criminal history at sentencing when the State produced no evidence to support that history following his objection. He argues that once he disputed his criminal history, the trial court should have refused to consider the disputed convictions or ordered an evidentiary hearing. We agree.

The trial court generally calculates an offender score by adding together the defendant's current offenses and prior convictions. RCW 9.94A.589(1)(a); *State v. Hunley*, 175 Wn.2d 901, 908-09, 287 P.3d 584 (2012). In determining the proper offender score, the trial court "may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing." RCW 9.94A.530(2); *Hunley*, 175 Wn.2d at 909. We review a sentencing court's calculation of an offender score de novo. *State v. Bergstrom*, 162 Wn.2d 87, 92, 169 P.3d 816 (2007).

In order to establish a defendant's criminal history for sentencing purposes, the State must prove a defendant's prior convictions by a preponderance of the evidence. RCW 9.94A.500(1); *Hunley*, 175 Wn.2d at 909-10. A certified copy of the judgment is the best evidence of a prior conviction, but the State also may produce other comparable documents or transcripts from prior hearings to prove prior convictions. *Hunley*, 175 Wn.2d at 910.

However, "[b]are assertions, unsupported by evidence, do not satisfy the State's burden to prove the existence of a prior conviction." *Id.* As a result, a prosecutor's criminal history summary that is not supported by evidence is not the type of comparable document that can establish the existence of a prior conviction. *Id.* at 915, 917. Any sentence imposed using an offender score based only on a prosecutor's criminal history summary violates due process. *Id.* at 917.

Here, the only information the State provided to the trial court at sentencing was a criminal history summary. The State produced no evidence supporting any of Case's prior convictions. And Case did not affirmatively acknowledge his criminal history – he objected to the lack of evidence. As a result, the State did not satisfy its burden of proving Case's prior convictions by a preponderance of the evidence.

The State argues that this court should affirm the trial court's sentence because the trial court sua sponte confirmed for itself that Case's prior convictions listed on the criminal history summary were valid by consulting the court's electronic database. The trial court relied on the judgment and sentence in Case's most recent prior conviction. The State claims that the court's database was a reliable source of information and that it should not matter whether that information came from the State or from the court.

However, RCW 9.94A.530(2) clearly provides that once a defendant objects to the State's proof of his prior convictions, the trial court must either (1) not consider the facts offered by the State or (2) grant an evidentiary hearing on the point. *State v. Grayson*, 154 Wn.2d 333, 339, 111 P.3d 1183 (2005).

> The purpose of RCW 9.94A.530(2) is to prevent ex parte contact with the judge, sua sponte investigation and research by a judge, and sentencing based on speculative facts. Underlying this statutory procedure is the principle of due process. The court should consider only adjudicative evidence that the parties in an adversarial context have "the opportunity to scrutinize, test, contradict, discredit, and correct.

*Id.* at 340 (citation omitted). Therefore, the trial court violated RCW 9.94A.530(2) by conducting its own investigation into Case's criminal history.

The State also argues that we should hold that the trial court's error was harmless. But the State fails to cite to authority, and none was found by independent research, holding that this type of sentencing error may be harmless.

Because the State did not produce any evidence supporting Case's convictions, we hold that the trial court erred in including Case's prior convictions at sentencing. The remedy is to remand for resentencing at which both parties will have the opportunity to present evidence of Case's prior convictions. *Hunley*, 175 Wn.2d at 915-16.

However, we note that Case was given a 55.5 month sentence and a 4.5 month term of community custody, and more than 60 months have passed since he was sentenced. Therefore, on remand the trial court first should determine whether Case has served his sentence. If so, this issue would be moot. *See In re Postsentence Review of Cage*, 181 Wn. App. 588, 591, 326 P.3d 805 (2014) (stating that the expiration of a sentence generally renders a sentencing issue moot).

CONCLUSION

We affirm Case's conviction, but we remand for the trial court to determine whether the sentencing issue is moot or for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.


We concur:

_____
WORSWICK, J.


_____
LEE, J.