

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE APR 0 9 2015

*Madsen, C.J.*

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on April 9, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 90329-8 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| BENITO GOMEZ, | ) | |
| Respondent. | ) | Filed **APR 0 9 2015** |

JOHNSON, J.—This case involves whether the trial court closed the courtroom during trial in violation of the defendant's rights under article I, section 22 of the Washington Constitution. The Court of Appeals reversed Benito Gomez's convictions for second degree murder and six counts of first degree assault on the grounds that the trial judge effected an unconstitutional closure of the courtroom during trial by his pretrial comment that the public would not be permitted to enter the courtroom once the proceedings began. First, we disagree that the trial judge, by mere virtue of making this remark, fully excluded the public from entering the courtroom and, thus, we have no basis for finding a constitutional violation. Second, even if we could presume the brief comment was enforced, this limitation to

courtroom entry does not constitute a closure. We reverse the Court of Appeals and reinstate Gomez's conviction.

## FACTS

Gomez was charged with first degree murder and six counts of first degree assault after he fatally shot a rival gang member and fired his handgun at fleeing rivals and residents of a nearby apartment building. Before swearing in the jury, the court considered Gomez's change of venue motion, in which Gomez argued that the heavy security in the courthouse would intimidate the jury and convey the impression that Gomez was dangerous. In denying the motion, the court made a few comments regarding the spectators of the proceedings: "This is a public courthouse. Everyone in the public is entitled to appear in this courthouse for appropriate matters, as either litigants or spectators or witnesses and in fact the courtroom is rather full today of spectators concerning this particular case." 2 Verbatim Report of Proceedings (VRP) at 150.

The judge continued in a lengthy explanation of his ruling to deny the venue change, and couched within that ruling, the judge made the comment that Gomez contends closed the proceedings:

> We continue to have rules of procedure where people have to be on time for proceedings here. We do not allow people to come into the courtroom after [it] is in session for not only security reasons but as well as the distraction that that causes when people come in.

2 VRP at 153.

Gomez did not object to the judge's comment, and the trial continued for the next three days. The record contains no indication as to whether the court took any action to enforce the policy or whether any observers were actually excluded as a result of the remark. The jury found Gomez guilty of the lesser-included crime of second degree murder and six counts of first degree assault. Gomez appealed, arguing for the first time that the trial court violated his public trial rights by not allowing the public to enter once the proceedings began. The Court of Appeals agreed, holding that the trial court improperly closed the courtroom without first considering the factors set forth in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995), and remanded for a new trial. *State v. Gomez*, noted at 180 Wn. App. 1012 (2014). We granted review. *State v. Gomez*, 181 Wn.2d 1002, 332 P.3d 984 (2014).

## ANALYSIS

Under Washington Constitution article I, section 22, criminal defendants have the right to a public trial. Defendants can raise claims of public trial rights violations for the first time on direct appeal, which we review de novo. We

3

consider these violations serious, falling into the category of constitutional error that entitles the defendant to reversal of his conviction and a new trial without requiring any showing of prejudice. *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012).

In a recent decision, we adopted a three-step framework for analyzing whether a trial court violated the defendant's public trial right: we determine (1) whether the portion of the proceeding at issue implicates the public trial right, which we analyze using an "experience and logic" analysis, (2) whether there was a closure of that proceeding, and (3) whether the closure was justified (did the court conduct a *Bone-Club* analysis on the record prior to closing the proceeding?). *State v. Smith*, 181 Wn.2d 508, 513-14, 334 P.3d 1049 (2014). In this case, neither party disputes that the public trial right attaches to the regular proceedings and that because the judge did not consider the *Bone-Club* factors, a closure of those proceedings would not be justified, so steps (1) and (3) need no analysis. Only the second step requires our review: whether the judge's comment alone effected an actual closure of the courtroom during the trial. Our cases have largely used a case by case approach in determining when a closure occurs, but we have established some general guidelines.

4

A complete closure occurs "when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011). The requirement for a *Bone-Club* analysis "come[s] into play when the public is *fully* excluded from proceedings within a courtroom." *Lormor*, 172 Wn.2d at 92 (emphasis added) (citing *Bone-Club*, 128 Wn.2d at 257). For example, we found closures when the trial court fully excluded all spectators during the proceeding, when it fully closed voir dire to spectators, and when the judge privately questioned jurors in chambers.[1]

Once it is found a closure has occurred, the appellant has no further burden. However, the appellant does bear the burden of supplying a record that is sufficient to show that the proceeding in question was actually closed. *State v. Koss*, 181 Wn.2d 493, 501-02, 334 P.3d 1042 (2014). A violation of this magnitude must be evident from the record; "[i]t is a well established principle that "'. . . [we] will not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent."'" *State v. Jasper*, 174 Wn.2d 96, 123-24, 271 P.3d 876

---

[1] *See State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006); *State v. Brightman*, 155 Wn.2d 506, 514-15, 122 P.3d 150 (2005); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 807-08, 100 P.3d 291 (2004); *Bone-Club*, 128 Wn.2d at 257. In contrast, the exclusion of a single person is not considered a closure. *Lormor*, 172 Wn.2d at 93.

(2012) (quoting *Barker v. Weeks*, 182 Wash. 384, 391, 47 P.2d 1 (1935) (quoting 4

C.J. *Appeal and Error* § 2666, at 736 (1916))).

We recently considered this issue in *Njonge*, in which the trial judge

explained to spectators, "'Tomorrow when we have the jury selection, there will

not be room for all of you. . . . The chance of all of you being able to be here and

observe are slim to none during the jury selection process.'" *State v. Njonge*, 181

Wn.2d 546, 550, 334 P.3d 1068 (quoting trial court record), *cert. denied*, 135 S. Ct.

880 (2014). We held that the comments did not effect a closure because there was

"*no conclusive showing* that spectators were totally excluded from the juror

excusals." *Njonge*, 181 Wn.2d at 556 (emphasis added). We clarified, "We have

required a better factual record to find a violation of this magnitude." *Njonge*, 181

Wn.2d at 558.

To be clear, the appellant does not generally have to show that spectators

were *in fact* excluded as a result of the court's actions. Rather, the appellant must

supply a record that reveals that the court took actions amounting to a closure, such

as explicitly issuing an order completely closing the proceedings or moving the

proceedings to chambers.[2] In *Njonge*, we found that the record was deficient, not

---

[2] *See State v. Paumier*, 176 Wn.2d 29, 32-33, 288 P.3d 1126 (2012) (jurors questioned in chambers, outside the view of any observers); *State v. Wise*, 176 Wn.2d 1, 7, 288 P.3d 1113

because the defendant failed to show that anyone was in fact excluded, but because "it [could not] be determined conclusively that observers were in the courtroom during the proceeding in question, neither [could] it be said that the public was excluded." *Njonge*, 181 Wn.2d at 558. In *Koss*, we similarly refused to infer that an alleged secret, closed meeting between the State's counsel and the trial judge had taken place when it was not reflected anywhere in the record. *Koss*, 181 Wn.2d at 502. Applying that approach here, we hold that the comment alone does not conclusively establish that the public was fully excluded from entry.

In a factually similar case, the Court of Appeals correctly concluded that the trial judge's statement—that he did not like people coming and going during closing arguments and asked those who did not think they could last throughout the morning to rethink being in the courtroom—did not amount to a closure because "the court did not 'completely' or 'purposefully' close the proceedings." *State v. Stark*, 183 Wn. App. 893, 903, 334 P.3d 1196 (2014) (citing *Lormor*, 172 Wn.2d at 93). We agree with this analysis; short of an explicit order to close the courtroom, we do not presume that the entire public was effectively prohibited from entry. The

---

(2012) (same); *Orange*, 152 Wn.2d at 802 (record demonstrated that the trial court prohibited all spectators and family members from observing voir dire); *Bone-Club*, 128 Wn.2d at 256 (trial judge ordered all spectators to leave the courtroom).

record must establish that the courtroom and proceedings were closed by express direction of the judge.

Based on the record here, we cannot determine whether a closure actually occurred. The only evidence in this record supportive of a possible closure is the judge's comment on the first day of trial, which Gomez contends amounted to a "ruling" for "a general prohibition for spectators and an exclusion of the public from the trial." Resp't's Suppl. Br. at 5. Far short of an actual ruling, the judge said, "We do not allow people to come into the courtroom after [it] is in session." 2 VRP at 153. The judge also commented, "This is a public courthouse. Everyone in the public is entitled to appear in this courthouse for appropriate matters, as either litigants or spectators or witnesses." 2 VRP at 150. The judge did not explicitly *order* a closure of the courtroom, such that we can conclusively determine that the statement itself was meant to prevent people from entering or to compel spectators to leave. Rather, the judge made the remark in the context of a lengthy ruling on venue, he mentioned it only once during the proceedings, and there is no other indication in the record that the court directed the exclusion of any spectators or that anyone else acted to close the trial to the public. The record shows the opposite here, that the courtroom was rather full of spectators and none were asked

to leave. Given our existing definition of a "closure," something more must be shown from the record.

Even if we presumed that the comment was enforced, the judge's rule does not constitute a closure. As we discussed in *Lormor*, the appellant must show that the judge acted to close the courtroom to the public, as opposed to acting to manage the in-court proceedings. As in *Lormor*, the exclusion of only one or a few individuals is a matter of courtroom operations, in which the trial judge possesses broad discretion "to preserve and enforce order in the courtroom and to provide for the orderly conduct of its proceedings." *Lormor*, 172 Wn.2d at 93-94. Just as trial court judges are permitted to exclude distracting individuals, they are permitted to impose reasonable restrictions on the public's manner of entry so as to minimize the risk of distraction or impact on the proceedings.

CONCLUSION

The record does not establish that the court closed the courtroom, and as such, no basis exists for finding that the trial court violated those public trial rights under article I, section 22. The record does not contain any indication that the trial court took action to enforce the brief comment made on the first day of trial. We have reiterated several times that we do not presume or infer a violation from a silent

9

record. We reverse the Court of Appeals and reinstate Gomez's convictions.[3]

WE CONCUR:

_____
Madsen, C.J.

_____
Owens, J.

_____
Fairhurst

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.

---

[3]The State makes two additional arguments in its briefing, neither of which warrants a detailed analysis. First, the State argues that using an experience and logic analysis, this court should find that the trial court did not effect a closure because, historically and logically, judges have possessed wide discretion in controlling the courtroom and maintaining decorum. Pet'r's Suppl. Br. at 7. But the State's reliance on that analysis is misplaced: we employ the experience and logic analysis to determine whether the public trial right attaches to a particular proceeding or portion of the proceedings. *State v. Sublett*, 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012). There is no question here that the right attaches to the regular trial proceedings.

Second, the State argues that if we do find that the comment effected a closure, the closure was de minimis in nature and does not warrant reversal. The State argues that our ruling in *State v. Shearer*, 181 Wn.2d 564, 573, 334 P.3d 1078 (2014), in which we said that the structural nature of the public trial violation "forecloses the possibility of de minimis violations," should not apply here because unlike *Shearer*, the record reveals that the public was actually present during the proceedings. We do not reach that issue here.