IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 67484-6-I |
| | ) | DIVISION ONE |
| JEFFREY ROBERT McKEE, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) ) | FILED: July 25, 2016 |

BECKER, J. — In 2005, a jury found Jeffrey McKee guilty on two counts of first degree rape and determined that he committed both crimes with a firearm. McKee's personal restraint petition contends that the trial judge violated his right to a public trial by closing the courtroom during a portion of voir dire to allow individual questioning of some of the prospective jurors. Individuals were questioned in the courtroom outside of the presence of the other jurors, but the record does not demonstrate that spectators were excluded. Because there is a lack of evidence that a courtroom closure actually occurred, we deny the petition.

After excusals for hardship, the court asked the remaining members of the jury panel, more than 50, to answer a written questionnaire. Some questions were designed to elicit particular knowledge or bias on the subject of rape. One question asked if the juror would prefer to discuss any responses out of the presence of other jurors. The judge informed the panel that the questionnaire

was to aid the attorneys and that one question asked whether "anybody wants to be talked to individually."

> So that is one thing that we do. I mean, if there's—if you have personal information you are hesitant to share in front of a bunch of people, we will talk to you individually. There will still be the court staff here and the lawyers, but anybody that wants to have sort of a semi-private—*and of course nobody will be allowed in the courtroom*—question and answer session about something that they just don't feel real comfortable talking about in front of a group full of people, that will be part of it. The rest of it the lawyers will use these questions to, you know, figure out what kind of questions to ask what people, so they are just not facing you cold turkey. So that is the reason for this.

(Emphasis added.) Some potential jurors did respond in the affirmative that they would rather be questioned in detail outside the presence of the other jurors. The questioning of these jurors occurred in the courtroom and was transcribed.

McKee contends the judge's statement that "of course nobody will be allowed in the courtroom" proves that a courtroom closure occurred in violation of his right to a public trial.

The wrongful deprivation of the public trial right is a structural error presumed to be prejudicial. State v. Wise, 176 Wn.2d 1, 14, 288 P.3d 1113 (2012). Before closing a trial to the public, the trial court must support the decision by considering, on the record, the factors identified in State v. Bone-Club, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). Failing to consider the Bone-Club factors before privately questioning potential jurors violates a defendant's right to a public trial and warrants a new trial on direct review. In re Pers. Restraint of Morris, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012). It is unnecessary to address whether a public trial violation is also presumed

2

prejudicial on collateral review because a claim like McKee's, brought as a personal restraint petition, can be resolved on the grounds of ineffective assistance of appellate counsel. Morris, 176 Wn.2d at 166. When appellate counsel fails to raise a courtroom closure issue that would have been presumptively prejudicial error on direct appeal, ineffective assistance by appellate counsel has been established because there is both deficient performance and prejudice. Morris, 176 Wn.2d at 166. Under Morris, the analytical framework we follow to determine whether McKee is entitled to relief is the same as on direct review.

A three-step framework is used for analyzing whether a trial court violated the defendant's public trial right: (1) Did the portion of the proceeding at issue implicate the public trial right? (2) Was there a closure of that proceeding? and (3) Was the closure justified through a Bone-Club analysis? State v. Gomez, 183 Wn.2d 29, 33, 347 P.3d 876 (2015). The public trial right extends to jury selection and applies to the questioning of individual prospective jurors. In re Pers. Restraint of Mines, 190 Wn. App. 554, 564, 364 P.3d 121 (2015). The trial judge in this case did not conduct a Bone-Club analysis. We therefore focus on the second step, whether a closure of the courtroom occurred during the individual questioning of jurors.

The requirement for a Bone-Club analysis comes into play when the public is fully excluded from proceedings within a courtroom. Gomez, 183 Wn.2d at 33. The appellant, or in this case the petitioner, bears the burden of supplying a record that is sufficient to show that the proceeding in question was actually

closed. Gomez, 183 Wn.2d at 34. The burden is not to show that spectators were *in fact* excluded as a result of the court's actions. Gomez, 183 Wn.2d at 34-35. "Rather, the appellant must supply a record that reveals that the court took actions amounting to a closure, such as explicitly issuing an order completely closing the proceedings or moving the proceedings to chambers." Gomez, 183 Wn.2d at 35.

The record does not include the questionnaire that was actually used, but it does include the preliminary versions proposed by the prosecutor and defense counsel who collaborated in producing the final version. Both parties proposed to ask whether the juror would prefer to give responses outside the presence of the other jurors.

After the jurors returned their completed questionnaires, the 10 or so jurors who had requested individual questioning were brought into the courtroom one by one, questioned, and excused or sent back to the jury room. The questions were typically phrased in terms of protecting the juror's privacy with respect to other members of the jury, not with respect to the public in general. For example:

> [DEFENSE COUNSEL]: My question is, is that something you wanted to discuss out of the presence of other jurors?
>
> . . . .
> [PROSECUTOR]: Okay. Is there anything else that you wanted to talk about outside the presence of the other jurors?
>
> . . . .
> [THE COURT]: Ms. Johnson. We're here because you have stated that you wanted to discuss something out of the presence of the whole jury.

The transcript mentions each time a different individual juror entered the courtroom. The presence or absence of spectators in the courtroom is not mentioned. When the individual questioning sessions concluded, the judge directed that the remaining jurors be brought as a group into the courtroom to hear "the rest of the jury selection instructions." The transcript states, "PROSPECTIVE JURORS PRESENT." There is no indication that the courtroom was reopened to allow spectators to come in, as one would expect to find if the courtroom had previously been closed for the "semi-private" sessions.

The transcript for the next day begins with a single juror present. This was a juror whose request for individual questioning had been overlooked the previous afternoon. The court said, "You asked to be talked to outside the presence of everyone else. Can you tell me why? The juror answered, "Well, just that there's some of the stuff I wanted to talk about . . . . I didn't necessarily want to bring those up in front of everybody else." Again, though the court had reverted to individual questioning, the record contains no mention of exclusion of spectators while this individual was questioned and no mention of reopening the courtroom when regular proceedings resumed.

McKee points out that some of the jurors who were questioned individually answered that they did not want to discuss certain information "in public," or "in open court." But these answers are not evidence that the courtroom was actually closed to members of the public. The court reporter was present, and her function had previously been explained to the prospective jurors, so it is unlikely they believed answers they gave during the individual sessions were completely

confidential. And even if they did, it is not evidence of conduct by the trial judge that amounted to a courtroom closure.

McKee contends the record is similar to that in State v. Brightman, 155 Wn.2d 506, 122 P.3d 150 (2005). Like here, the argument that a courtroom closure occurred during jury selection turned entirely on brief remarks by the trial court before jury selection began. The record contained no other reference to spectators being in the courtroom or being denied access to the courtroom. Brightman, 155 Wn.2d at 511. The court nevertheless held that a violation of the public trial right was established because the plain language of the trial court's ruling imposed a closure. "On appeal, a defendant claiming a violation to the public trial right is not required to prove that the trial court's order has been carried out." Brightman, 155 Wn.2d at 517.

Brightman is dissimilar because the trial judge in that case stated in no uncertain terms that observers would not be allowed to witness jury selection. The judge directed the attorneys to tell interested observers they were not allowed to be in the courtroom during jury selection. The judge ruled in plain language that the courtroom would be open only after the trial began.

> "In terms of observers and witnesses, we can't have any observers while we are selecting the jury, so if you would tell the friends, relatives, and acquaintances of the victim and defendant that the first two or three days for selecting the jury the courtroom is packed with jurors, they can't observe that. It causes a problem in terms of security.
> When we move to the principal trial, anybody can come in here that wants to. It is an open courtroom.
> Any other problem?"

Brightman, 155 Wn.2d at 511.

The record supplied by McKee does not reveal that the court took a similar action amounting to a closure. The trial court's remark to the jury that "nobody will be allowed in the courtroom" may have been a thought, perhaps even an intention, but it was not an action or order. The court did not at any time direct either the court staff or the attorneys to close the door, put up a sign, or instruct people to leave. The judge's initial reference to a "semi-private" question and answer session in which "nobody will be allowed in the courtroom" was not a ruling. To interpret it as such would be inconsistent with the rest of the record indicating that the uppermost thought for the court and the attorneys was to encourage frank disclosure by removing the inhibiting presence of other jurors.

Because of the lack of evidence that spectators were actually excluded, the analogous case here is not Brightman but rather State v. Njonge, 181 Wn.2d 546, 334 P.3d 1068, cert. denied, 135 S. Ct. 880 (2014). In Njonge, the court concluded, "On this record, while it cannot be determined conclusively that observers were in the courtroom during the proceeding in question, neither can it be said that the public was excluded. We have required a better factual record to find a violation of this magnitude." Njonge, 181 Wn.2d at 558 (footnote omitted). We similarly hold that the record is not strong enough to support a determination that the public was excluded. McKee has not established a public trial violation.

McKee also argues that he is entitled to a new trial because of an instructional error to which counsel did not object. A jury instruction stated that juror unanimity was required to answer no to a special verdict interrogatory asking whether the rapes were committed with a firearm. McKee contends the

instruction violated due process. He relies on State v. Bashaw, 169 Wn.2d 133, 234 P.3d 195 (2010), overruled by State v. Nunez, 174 Wn.2d 707, 285 P.3d 21 (2012). The aspect of Bashaw upon which McKee relies was overruled by Nunez, a case he does not address. Following Nunez, we conclude McKee is not entitled to relief on the basis of the special verdict instruction.

The petition is denied.

Becker, J

WE CONCUR: