IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31701-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN ANTHONY CASTRO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — The trial court, after a jury trial, convicted John Castro of second

degree murder, among other charges. Castro assigns three errors on appeal. First, the

trial court erred by denying his motion for a mistrial after Detective Kip Hollenbeck

violated the trial court's order to exclude testimony of gangs. Second, the trial court

erred by barring his wife from the courtroom during trial when the State never called her

to testify. Third, the trial court erred when imposing a life sentence on the assumption

that he was a persistent offender. We reject Castro's first two assignments of error, but

agree that the evidence did not support a life sentence. We remand for resentencing.

## FACTS

Defendant John Castro pled guilty, in 2008, to conspiracy to deliver a controlled

substance with a deadly weapon enhancement. The felony judgment did not classify the crime as a particular class of felony.

Defendant John Castro performs rap music. On the evening of Friday, November 26, 2011, Castro attended a rap concert at the Ichiban restaurant in Spokane. A group from Moses Lake, including members of a rap band intending to perform that evening, also attended the concert. The Moses Lake entourage included the murder victim, Jose Solis.

During the course of the rap music concert, John Castro and Stafone Fuentes fought in the entrance to Ichiban. Restaurant security quickly ended the fisticuffs, and the restaurant terminated the rap concert.

Upon the closing of the rap concert, many concertgoers, including John Castro and Jose Solis, went to the Quality Inn, a nearby hotel. A fight among a dozen men broke out on the fourth floor of the hotel. The men included John Castro and Jose Solis. Tera Quarles observed the fight. A handful of men came downstairs from an upper floor and joined the chaos. Objects flew through the air. Quarles saw Castro with a gun, saw him lift and point the gun, and saw him shoot Solis. Shamela Freeman saw Castro with a gun, although she saw no shot. After the shot, Tera Quarles grabbed Castro and asked him why he shot Solis. Jose Solis died from a gunshot wound.

PROCEDURE

The State of Washington charged John Castro with murder in the second degree, two counts of second degree assault, riot, and first degree unlawful possession of a firearm. The State brought an ER 404(b) motion to submit evidence of Castro's gang affiliation and criminal history to the jury. The State argued Castro's gang association served as his motive to participate in the hotel melee. The trial court rejected the argument and ordered that "all gang evidence is excluded from the trial." Clerk's Papers (CP) at 265. The court also directed the State to "instruct the witnesses not to mention gang membership or evidence." CP at 265.

At the request of the State, the trial court excluded all potential witnesses from inside the courtroom during trial. The ruling barred John Castro's wife, Dyneshia Sleep, from the courtroom during testimony. John Castro complained to the court about the exclusion of his wife. The State responded that it would prefer to avoid calling Sleep as a witness. The State, nonetheless, argued that it subpoenaed Sleep as a witness because she was at the Quality Inn when the shooting occurred and she might testify to facts essential to the State proving its case. The trial court maintained its ruling that prevented Sleep from viewing the trial. Sleep was not called to testify during trial.

During trial, Detective Kip Hollenbeck testified for the State. During cross-examination, Hollenbeck testified, in part:

Q. No. No. Detective Hollenbeck, you've heard some testimony

3

about showing people photo montages. When you showed all these people photo montages, did you ever once say to them that the person may not be in the photograph?

A. Yes. There's a warning at the bottom of the form, and each time I show the lineup I read that warning [to] them. That warning explains that this person may or may not be included in this photo lineup.

Q. Okay. And then you heard Mr. Powell testify, and I asked him some questions about this. Mr. Powell actually identified Jason St. Mark in a photograph.

A. Yes.

Q. You've just shown [ ] us all sorts of video. Where was Mr. St. Mark?

A. The first day, the day of this incident, I was reviewing videos with gang experts.

MS. REARDON: Objection.

THE COURT: Ladies and gentlemen, you will disregard the witness's last answer. If you would answer the question, detective.

THE WITNESS: Yes. We were viewing the video and Anthony Fuentes was seen on the video.

Report of Proceedings (RP) at 1382-83.

Based on Detective Hollenbeck's violation of the pretrial ruling to exclude gang evidence, John Castro made a half-time motion to dismiss. The trial court denied the motion.

The State initially requested a jury instruction for the lesser included offense of manslaughter, but withdrew the request. John Castro, preferring an "'all or nothing' defense," opposed a manslaughter instruction. CP at 397.

At the conclusion of the trial, the trial court dismissed the two assault charges for insufficient evidence. The jury found John Castro guilty of second degree intentional murder, second degree felony murder, felony riot, and first degree unlawful possession of

4

No. 31701-3-III
*State v. Castro*

a firearm.

After the jury verdict, John Castro again sought a new trial because of Detective Kip Hollenbeck's violation of the trial court's order excluding testimonial references to gangs. As part of the motion, defense counsel filed a declaration that repeated a posting on a Spokane news station's website. The post read:

> I was a juror on this trial, and yes, they were all a bunch of gang bangers. I saw it first hand. I was blown away by their cocky attitudes, and pure lack of respect towards the attorneys and the judge. He is exactly where he should be.

CP at 629. The trial court denied the motion for a new trial.

The State of Washington requested the trial court sentence John Castro, as a persistent offender, to a sentence of life without the possibility of parole. The State contended that Castro incurred two previous strikes, one from his 2004 conviction, and the other from a 2008 conviction for conspiracy to deliver a controlled substance with a deadly weapon enhancement. The trial court sentenced Castro to life imprisonment as a persistent offender because of his 2004 and 2008 convictions.

LAW AND ANALYSIS

Hollenbeck Testimony

John Castro contends the trial court erred by denying the defense motion for mistrial after Detective Kip Hollenbeck intentionally violated the court's order prohibiting any mention of gangs and so tainted the proceedings that Castro could not get

5

a fair trial. We do not know if Hollenbeck intentionally violated the order. The State responds that Detective Hollenbeck's reference to gang experts was harmless because it was ambiguous, lacked sufficient detail for the jury to infer Castro had gang affiliations, the court ordered the jury to disregard the comment, and Castro never requested a curative instruction.

We deny the request for a new trial. Detective Hollenbeck should have been instructed to not mention the word "gangs," and he should have obeyed that instruction. Nevertheless, under case law, the trial court did not abuse its discretion in denying the motion for a mistrial.

Denial of a motion for a mistrial is reviewed under an abuse of discretion standard. *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994). An abuse of discretion occurs only when no reasonable judge would have reached the same conclusion. *State v. Johnson*, 124 Wn.2d at 75; *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). A mistrial is required only when a defendant has been so prejudiced by a trial irregularity that only a new trial can ensure that the defendant will be tried fairly. *Johnson*, 124 Wn.2d at 76.

One former United States Supreme Court Associate Justice observed that all practicing lawyers recognize as unmitigated fiction the naïve assumption that prejudicial effects can be overcome by instructions to the jury. *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (Justice Jackson, concurring opinion).

6

Nevertheless, under Washington law, we presume in all cases that the jury obeyed the instructions of the court, and this presumption must prevail until it is overcome by some showing otherwise. *In re Municipality of Metropolitan Seattle*, 67 Wn.2d 923, 930-31, 410 P.2d 790 (1966).

In considering whether a trial irregularity warrants a new trial, the court must consider (1) the seriousness of the irregularity, (2) whether the statement was cumulative of evidence properly admitted, and (3) whether the irregularity could be cured by an instruction. *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992); *State v. Escalona*, 49 Wn. App. 251, 254, 742 P.2d 190 (1987). The appropriate inquiry is whether the testimony, when viewed against the backdrop of all the evidence, so tainted the trial that the defendant did not receive a fair trial. *State v. Post*, 118 Wn.2d at 620.

John Castro's trial court immediately instructed the jury to disregard Detective Kip Hollenbeck's reference to a gang expert. The jury heard no other references to gangs. The trial court gave thorough consideration to the seriousness of Detective Kip Hollenbeck's testimony, but determined it was not prejudicial because it "simply indicated he had used the task force . . . when he was trying to identify individuals." RP at 1425.

John Castro emphasizes a juror's posting of a message on a news station's website. We have no confirmation that a juror wrote the message. Nevertheless, the message does not suggest that the juror concluded that Castro was a gang member

7

because of Kip Hollenbeck's statement. The juror wrote that he or she concluded Castro and others were gang members because of the cocky attitudes and lack of respect for others.

John Castro claims that gang evidence cannot be cured by instructing the jury to disregard it, but he does not provide any authority for this contention. The two cases Castro cites, *State v. Wade*, 98 Wn. App. 328, 989 P.2d 576 (1999) and *State v. Holmes*, 122 Wn. App. 438, 93 P.3d 212 (2004), are inapposite. Neither case involves gang evidence, nor a curative instruction to the jury.

### Exclusion of Dyneshia Sleep

John Castro contends that the prosecutor committed misconduct by requesting that the trial court exclude Castro's wife from the courtroom as a potential witness when the State had no intention to call her to testify. Castro also briefly suggests that the exclusion of Sleep violated his public trial right. The State responds that the exclusion of witnesses is a matter within the discretion of the trial court and Castro forwards no evidence that the prosecutor surreptitiously requested Sleep's exclusion or that the State subpoenaed her for a nefarious purpose. Also, the State argues that the trial court did not violate Castro's public trial right because the exclusion of a witness is a matter of courtroom governance within the discretion of the trial court. We agree with the State.

In order to establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record

8

and the circumstances at trial. *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008). The burden to establish prejudice requires the defendant to prove a substantial likelihood that the instances of misconduct affected the jury's verdict. *State v. Thorgerson*, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011).

John Castro misconstrues the record to raise the specter of malfeasance where none existed. When Castro questioned the State's motivation for excluding Dyneshia Sleep from the proceedings, the State provided a sound explanation. Although the State preferred to avoid calling Sleep as a witness, the State kept her under subpoena because she possessed percipient knowledge of facts the State needed to prove. Castro also fails to show how Sleep's presence in the audience during the trial would have altered the jury's determination of guilt.

John Castro, in a short passage in his brief, claims the exclusion of Dyneshia Sleep violated his public trial right. He cites *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009), *In re Personal Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004), *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012), and *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012). In *Strode*, *Wise*, and *Paumier*, the Supreme Court found a public trial right violation because the trial court performed juror interviews in the judges' chambers. *In re Personal Restraint of Orange* involved a public trial right violation when the trial court excluded the family of the victim and the defendant during voir dire because of limited space in the courtroom with a ninety-eight-person venire. None of the decisions

9

entail the exclusion of witnesses during an ongoing trial. Castro forwards no decision that holds that exclusion of a witness constitutes a violation of an accused's right to a public trial.

To successfully raise a public trial right violation, the defendant bears the initial burden of showing a closure occurred. *State v. Gomez*, 183 Wn.2d 29, 34, 347 P.3d 876 (2015). The appellant must show that the judge acted to close the courtroom to the public as opposed to acting to manage the in-court proceedings. *State v. Gomez*, 183 Wn.2d at 36. The exclusion of only one or a few individuals is a matter of courtroom operations, in which the trial judge possesses broad discretion to preserve and enforce order in the courtroom and to provide for the orderly conduct of its proceedings. *State v. Lormor*, 172 Wn.2d 85, 93-94, 257 P.3d 624 (2011); *State v. Gomez*, 183 Wn.2d at 36. The Supreme Court declared in *State v. Johnson*, 77 Wn.2d 423, 428, 462 P.2d 933 (1969):

> The power to exclude witnesses from the courtroom, we think, falls within the general discretionary powers of the court to be exercised during trial in aid of eliciting the truth, promoting the orderly presentation of evidence, and to assure that all parties, in the exercise of reasonable diligence, are afforded fair opportunity to offer all relevant evidence.

We hold that the trial court did not close the courtroom when it excluded a potential witness from the courtroom during trial testimony. In turn, the trial court did not breach John Castro's right to a public trial.

10

Life Sentence

John Castro contends the trial court erred by finding him a persistent offender. He argues that the trial court mistakenly classified one of his prior offenses, conspiracy to deliver a controlled substance with a deadly weapon enhancement, as a most serious offense. The State responds that the conspiracy to deliver a controlled substance with a deadly weapon enhancement was a most serious offense because the offense was a felony with a deadly weapon finding, even if the deadly weapon enhancement is not valid. This court must remand for resentencing because the conspiracy to deliver a controlled substance conviction is facially invalid and cannot count as a most serious offense.

Under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570, a trial court must impose a life sentence for a persistent offender. A persistent offender is someone who is currently being sentenced for a most serious offense and also has two prior convictions for most serious offenses. RCW 9.94A.030 reads in relevant part:

> (37) "Persistent offender" is an offender who:
> (a)(i) Has been convicted in this state of any felony considered a most serious offense; and
> (ii) Has, before the commission of the offense under (a) of this subsection, been convicted as an offender on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses and would be included in the offender score under RCW 9.94A.525; provided that of the two or more previous convictions, at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted.

In turn, RCW 9.94A.030 defines, in relevant part, as a "most serious offense"

11

(32) "Most serious offense" means any of the following felonies or a felony attempt to commit any of the following felonies:

(a) Any felony defined under any law as a class A felony or criminal solicitation of or criminal conspiracy to commit a class A felony;

. . . .

(s) Any other class B felony offense with a finding of sexual motivation;

(t) Any other felony with a deadly weapon verdict under RCW 9.94A.825.

Under the POAA, the State bears the burden of proving, by a preponderance of the evidence, the existence of prior convictions that constitute predicate offenses for application of the POAA. *State v. Knippling*, 166 Wn.2d 93, 100, 206 P.3d 332 (2009).

John Castro contends the conspiracy to deliver a controlled substance with a deadly weapon enhancement does not qualify as a most serious offense under the POAA. He argues that a deadly weapon enhancement does not create either a Class A or Class B felony and thus does not fall under RCW 9.94A.030(32)(a) or (s). In other words, his 2008 conviction was for an unranked felony. We agree.

Under *State v. Soto*, 177 Wn. App. 706, 716, 309 P.3d 596 (2013), the deadly weapon enhancement cannot apply to an unranked felony. Conspiracy to deliver a controlled substance is an unranked felony. *State v. Hebert*, 67 Wn. App. 836, 837, 841 P.2d 54 (1992).

John Castro may challenge the 2008 deadly weapon enhancement in the pending prosecution. When a defendant is convicted of a nonexistent crime, the judgment and

12

No. 31701-3-III
*State v. Castro*

sentence is invalid on its face. *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 857, 100 P.3d 801 (2004). Although Castro pled guilty to the challenged offense, exceptions to the foreclosure of collateral attack on a guilty plea exist when, on the face of the record, the court had no power to enter the conviction or impose the sentence. *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 720, 10 P.3d 380 (2000).

The State claims the conspiracy to deliver a controlled substance with a deadly weapon enhancement is a serious offense under RCW 9.94A.030(32)(t), which provides: "[a]ny other felony with a deadly weapon verdict under RCW 9.94A.825" is a serious offense. The State argues that, even if the enhancement is not valid, the crime is a serious offense because of a deadly weapon finding. This argument fails, however, because neither the judge nor a jury entered a deadly weapon finding in the earlier prosecution. Neither the amended information, nor the statement of the facts by the prosecutor at the plea hearing, mentioned a deadly weapon.

John Castro's second strike, a 2008 conviction for conspiracy to deliver a controlled substance with a weapon enhancement, is a facially invalid conviction. Therefore, he suffered no deadly weapon verdict to raise the conviction to a most serious offense.

### Statement of Additional Grounds

John Castro asserts five additional grounds for reversal in his statement of additional grounds:

13

1. Prosecutor and police misconduct committed by introducing gang evidence in violation of the court's order.

2. Introduction of gang evidence violated John Castro's constitutional right to a fair trial by an impartial jury.

3. The trial court abused its discretion in excluding Dyneshia Sleep from the courtroom when she was not obligated to testify against her husband, pursuant to RCW 5.60.060(1).

4. John Castro was entitled to a lesser included instruction on manslaughter because the evidence at trial only proved an accidental death.

5. It was fundamentally unfair to use the conspiracy to deliver a controlled substance conviction as a strike for establishing a sentence of life without parole.

Statements of additional grounds 1, 2, 3, and 5 mirror contentions raised by appellant's counsel. We will not repeat our analysis.

John Castro contends that the trial court erred because he was entitled to receive a jury instruction on the lesser included offense of manslaughter. A defendant who is entitled to a lesser included instruction may choose to forgo such instruction. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). Even if Castro was entitled to a lesser included instruction, he intentionally waived his right to the instruction. Castro opposed any manslaughter instruction because of a preference for an "'all or nothing'" defense. CP at 397.

14

No. 31701-3-III
*State v. Castro*

CONCLUSION

We affirm John Castro's convictions. We vacate his life sentence under the POAA. We remand the case to the trial court to exclude Castro's 2008 conviction for conspiracy to deliver a controlled substance with a deadly weapon enhancement from a POAA calculation and to resentence Castro.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

Fearing, C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

15