# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75630-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KENNETH EDWARD BARRETT, | ) | |
| | ) | |
| Appellant. | ) | FILED: December 5, 2016 |
| | ) | |

LEACH, J. — Kenneth Barrett appeals his conviction for bail jumping. He asserts claims of prosecutorial misconduct, ineffective assistance of counsel, and violation of his public trial rights. Because the prosecutor's comments drew reasonable inferences from the evidence, we reject Barrett's prosecutorial misconduct and ineffective assistance of counsel claims. And recent precedent controls Barrett's public trial claim. The trial court did not close the courtroom by holding a sidebar during juror selection and thus did not violate Barrett's public trial rights.

## FACTS

The State charged Kenneth Barrett with malicious mischief after he intentionally damaged vehicles belonging to the daughter of his deceased partner. At his arraignment on this charge, Barrett signed an order and notice setting trial date or other hearings and conditions of release. Barrett appeared

for his next court date, an omnibus hearing, where he signed an agreed order of trial continuance. That document listed his status conference for November 12, 2014, at 9:00 a.m. It warned the defendant that "failure to appear may result in issuance of an arrest warrant, forfeiture of bail, and criminal prosecution for bail jumping."

Barrett had not appeared when the trial court called his name at 10:35 a.m. on November 12. The court issued a bench warrant at the State's request. The State amended the information to add a count of bail jumping.

During jury selection, the trial court held a sidebar in which it recommended excusing four jurors for cause. The court reporter did not transcribe the sidebar. The court immediately made a record of it, however, and explained its reasons for dismissing each juror. Neither party objected to the court's description.

Barrett's defense to the bail jumping charge was that he did not know about the court date he missed. He testified to the following. He is legally blind and unable to read documents. He signed his court documents in court but could not read them. In particular, he could not read the date and time of his November 12 hearing. His brother normally told him his court dates, but his brother did not tell him about the November 12 court date. He came to court "before noon" on November 12 after getting a call from his lawyer. Barrett

conceded that he signed the documents listing his court dates in front of a judge, that he spoke with the judge about what he was signing, and that his counsel was present for the conversation.

A deputy prosecuting attorney, John Michael Jones, testified about the trial court's procedures between arrest and trial.[1] The trial court arraigns the defendant. At the arraignment, the court receives the defendant's pleas, schedules hearings, and sets a trial date. The court announces those hearing dates and times to the defendant, defense counsel, and the prosecutor. It also gives the parties written orders and notices that state those dates. When a party wishes to continue a trial date, the defendant, defense counsel, and the prosecutor appear before a judge again to discuss the requested changes.

In her closing argument, the prosecutor said of Barrett's testimony, "These are his court dates. They're not his brother's court dates. And more importantly, he's already had notice of those court dates. He signed for them. He's talked to the judge about them." Similarly, during rebuttal, she said, "He signed those documents, and he had conversations with the Court and his attorney [that Deputy Prosecuting Attorney] Jones talked to you about. That happens every time." Barrett's counsel did not object to either of these comments.

---

[1] Jones is a Thurston County deputy prosecuting attorney but was not involved in prosecuting Barrett.

The jury convicted Barrett of bail jumping.[2]  Barrett appeals.

### STANDARD OF REVIEW

This court reviews a claim of prosecutorial misconduct under an abuse of discretion standard.[3]  It reviews an ineffective assistance of counsel claim de novo as a mixed question of law and fact.[4]  And it reviews constitutional issues and other questions of law de novo.[5]

### ANALYSIS

Prosecutorial Misconduct

Barrett contends that the prosecutor's statements in her closing argument that the trial court judge had told Barrett his court date amounted to prosecutorial misconduct.  We disagree.

A defendant "bears the burden of proving that the prosecutor's conduct was both improper and prejudicial."[6]

This court evaluates the challenged statements' propriety in "the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions."[7]  Attorneys have "'latitude to argue the

---

[2] The jury failed to reach a verdict on the malicious mischief charge; Barrett later pleaded guilty to a lesser degree of malicious mischief.

[3] State v. Ish, 170 Wn.2d 189, 195-96, 241 P.3d 389 (2010).

[4] State v. Davis, 174 Wn. App. 623, 639, 300 P.3d 465 (2013).

[5] State v. Jorgenson, 179 Wn.2d 145, 150, 312 P.3d 960 (2013).

[6] State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

[7] State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

facts in evidence and reasonable inferences' in their closing arguments."[8] But they may not "urg[e] the jury to decide a case based on evidence outside the record."[9]

When, as here, the defendant did not object at trial, the defendant waived any error unless the misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[10] "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[11]

Here, the prosecutor did not make an improper statement. And even if she did, her statements were not "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[12]

Jones testified that the trial court always announces the dates and times of a defendant's upcoming pretrial hearings.[13] In particular, he testified that the

---

[8] Dhaliwal, 150 Wn.2d at 577 (quoting State v. Smith, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985)).

[9] State v. Pierce, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012).

[10] Emery, 174 Wn.2d at 760-61.

[11] Emery, 174 Wn.2d at 760 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

[12] Emery, 174 Wn.2d at 760-61.

[13] Barrett does not assign error to the trial court's admission of Jones's testimony explaining a defendant's pretrial hearings.

trial court would have discussed the date and time of the November 12 status conference with Barrett, his counsel, and the prosecutor at Barrett's August 14 omnibus hearing and that Barrett's signature on the order from that hearing means he must have been present.

Consistent with this testimony, Barrett acknowledged that he spoke with and signed each document in front of a judge:

> Q.  My question is you have no idea if you put your signature on this document either.
>
> A.  It's my name. I put it on it.
>
> Q.  Okay. And all of these would have occurred while you were in person in front of the Court, correct? Do you recall being in court and signing documents?
>
> A.  Yeah.
>
> Q.  And you recall being in front of the judge signing documents, correct?
>
> A.  Yeah.
>
> Q.  And you recall having a conversation with the judge about what you were signing?
>
> A.  Yeah, and they pointed out where I sign that too.
>
> Q.  When you had that conversation with your judge about what you are signing, your counsel was present with you, correct?
>
> A.  I guess.
>
> . . . .

Q.      . . . And do you remember being advised by the judge specifically that you had to be—your presence was required at all hearings in this matter?

A.      Yeah.

Barrett also acknowledged that he had appeared at other court appearances where he was informed of upcoming court dates.

The prosecutor relied on this evidence in her closing argument.[14] She acted within her wide latitude to make reasonable inferences from the evidence when she inferred from Jones's and Barrett's testimony that Barrett had spoken to the judge who set his court dates and had heard the dates announced. Her statements that Barrett "talked to the judge about" his court dates and "had conversations with the Court and his attorney" (presumably about those dates) were not improper and thus did not amount to misconduct.

Moreover, even if the comments were improper, Barrett did not object to them and they were not "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[15] Barrett makes only a conclusory argument that the statements likely affected the jury's verdict. He provides no support for his assertion that an instruction could not have cured any resulting

---

[14] Barrett cites no decisions that have found statements like the ones here to be improper. In the case Barrett cites for this proposition, State v. Belgarde, the prosecutor connected the defendant, a Native American, to a group called the American Indian Movement, which the prosecutor described as "a deadly group of madmen." 110 Wn.2d 504, 506, 755 P.2d 174 (1988).

[15] Emery, 174 Wn.2d at 760-61.

prejudice. And he identifies nothing in the record suggesting flagrant misconduct. Barrett thus does not make the heightened showing required when a defendant fails to object at trial.

Ineffective Assistance of Counsel

Barrett next contends that his attorney's failure to object to the prosecutor's statements at closing argument amounts to ineffective assistance of counsel.

To prove ineffective assistance of counsel, a defendant must show, first, that counsel provided representation so deficient that it fell below an objective standard of reasonableness and, second, that the deficient performance prejudiced him.[16] Matters of trial strategy or tactics do not establish deficient performance.[17] "Counsel's decisions regarding whether and when to object fall firmly within the category of strategic or tactical decisions."[18] "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal."[19] A mistake prejudices a

---

[16] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

[17] State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

[18] State v. Johnston, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007).

[19] Madison, 53 Wn. App. at 763; see Johnston, 143 Wn. App. at 19 (applying observation to failure to object to prosecutor's remarks).

defendant when there is a reasonable probability that but for counsel's errors, the result of the trial would have been different.[20]

Such "egregious circumstances" are absent here. As discussed above, the prosecutor's comments were not improper. The trial court likely would not have sustained any objection. Barrett's trial counsel's failure to object was objectively reasonable, and his performance was not deficient. Because Barrett did not satisfy the first prong of his ineffective assistance claim, we need not decide whether there was a "reasonable probability" that the prosecutor's comments affected the jury verdict.

Right to Public Trial

Finally, Barrett contends that the trial court violated his right to a public trial by making for-cause excusals at a sidebar during jury selection. Recent decisions by the Supreme Court and Division Two of this court foreclose this argument.

The Washington Constitution, article 1, section 22, and the Sixth Amendment to the United States Constitution guarantee a defendant the right to a public trial. A defendant may claim for the first time on appeal that this right was violated.[21] If it was, then this court will presume the defendant was

---

[20] State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).
[21] State v. Koss, 181 Wn.2d 493, 498, 334 P.3d 1042 (2014).

prejudiced.[22]   This court follows a three-part analysis to determine whether a defendant's public trial right was violated: "First, we ask if the public trial right attaches to the proceeding at issue.  Second, if the right attaches we ask if the courtroom was closed.  And third, we ask if the closure was justified."[23]

The first part of this analysis is satisfied here:  the public trial right does attach to jury selection, including for-cause and peremptory challenges.[24]

Under the second part, Washington courts recognize two types of closures.  The first occurs "'when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave.'"[25]  The second occurs "where a portion of a trial is held someplace 'inaccessible' to spectators, usually in chambers."[26]  Barrett does not allege the first type of closure here.  Barrett's challenge thus depends on whether the sidebar rendered jury selection inaccessible to the public.

---

[22] State v. Strode, 167 Wn.2d 222, 231, 217 P.3d 310 (2009).

[23] State v. Love, 183 Wn.2d 598, 605, 354 P.3d 841 (2015).  "The appellant carries the burden on the first two steps; the proponent of the closure carries the third."  Love, 183 Wn.2d at 605.  "A closure unaccompanied by a Bone-Club analysis on the record will almost never be considered justified." State v. Smith, 181 Wn.2d 508, 520, 334 P.3d 1049 (2014) (citing State v. Bone-Club, 128 Wn.2d 254, 906 P.2d 325 (1995)).

[24] Love, 183 Wn.2d at 606 (explaining that "for cause and peremptory challenges can raise questions about a juror's neutrality and a party's motivation for excusing the juror that implicate the core purpose of the right, and questioning jurors in open court is critical to protect that right").

[25] Love, 183 Wn.2d at 606 (quoting State v. Lormor, 172 Wn.2d 85, 93, 257 P.3d 624 (2011)).

[26] Love, 183 Wn.2d at 606 (quoting Lormor, 172 Wn.2d at 93).

Recent decisions of the Supreme Court and Division Two have answered "no" to this question. In State v. Love,[27] the Supreme Court held that a sidebar during jury selection implicated the public trial right but was not a courtroom closure. During voir dire, the trial court judge called the defense and prosecuting attorneys to the bench to discuss for-cause challenges. The court reporter recorded the brief exchange, in which the defense asked the court to excuse two jurors and the State did not object.[28] The Supreme Court reasoned that "the public had ample opportunity to oversee the selection of Love's jury because no portion of the process was concealed from the public; no juror was questioned in chambers."[29] Instead, the court noted, the public could watch the judge and attorneys ask questions and make challenges and the public could "ultimately evaluate the empaneled jury."[30] It noted that the transcript was "publically available."[31]

After Love, the Supreme Court remanded a similar case for Division Two to reconsider.[32] In State v. Anderson,[33] the jurors were questioned in open court,

---

[27] 183 Wn.2d 598, 605-06, 354 P.3d 841 (2015).
[28] Love, 183 Wn.2d at 602. The defense asked the trial court to strike two jurors, and the State had no objection.
[29] Love, 183 Wn.2d at 607.
[30] Love, 183 Wn.2d at 607.
[31] Love, 183 Wn.2d at 607.
[32] State v. Anderson, 184 Wn.2d 1009 (2015) (granting review and remanding).
[33] 194 Wn. App. 547, 549, 377 P.3d 278 (2016).

the defendant made for-cause challenges in a sidebar conference, and the judge dismissed those jurors. Later, the court dismissed a fifth juror for cause on its own initiative at another sidebar conference. But, unlike in Love, the court made no verbatim record of the sidebars; instead, the trial court stated their results for the record.[34] Division Two initially held that the trial court had closed the courtroom and violated the defendant's public trial right. On remand, however, the court held that the only distinguishing feature from Love—the lack of a transcript—did not make the sidebars a closure. The court reasoned that "the trial court's placing what occurred at sidebar on the record meant that '[t]he public was present for and could scrutinize the selection of [the] jury from start to finish,' thereby affording Anderson the safeguards of the public trial right."[35]

We agree with Anderson and hold that Love also controls the outcome of Barrett's public trial claim. The only distinction Barrett shows between his challenge and the one the Supreme Court rejected in Love is the lack of a transcript. Division Two squarely addressed this concern in Anderson. Here, as in Anderson, the judge gave an oral summary of the sidebar immediately after it happened. Both sides agreed that the summary accurately summarized the

---

[34] Anderson, 194 Wn. App. at 549.
[35] Anderson, 194 Wn. App. at 552-53 (alteration in original) (quoting Love, 183 Wn.2d at 607).

sidebar.[36] We presume that the jurors were questioned in open court, and afterward the public could "evaluate the empaneled jury."[37] Anderson properly resolved the issue Barrett raises.[38]

## CONCLUSION

Because Barrett fails to show that the prosecutor's statements at closing argument were either improper or prejudicial, his claims of prosecutorial misconduct and ineffective assistance of counsel both fail. And because recent cases have found no courtroom closure under facts analogous to those here, Barrett's public trial claim also fails. We affirm.

_Leach, J._

WE CONCUR:

---

[36] The Supreme Court has approved of "promptly memorializ[ing]" sidebars as a substitute for holding them on the record. Smith, 181 Wn.2d at 516 n.10.

[37] Love, 183 Wn.2d at 607.

[38] State v. Effinger, another recent Division Two decision, is in accord with Anderson. 194 Wn. App. 554, 561, 375 P.3d 701 (2016), petition for review filed, No. 93459-2 (Wash. Aug. 9, 2016).